BEEMAN *v.* STATE OF INDIANA.

[No. 28,974. Filed December 11, 1953.]

*Winslow Van Horne,* of Auburn, *Sid M. Cleveland* and *Charles B. Salyer,* both of Anderson, for appellant.

*Edwin K. Steers,* Attorney General and *Carl Humble,* Deputy Attorney General, for appellee.

DRAPER, C. J.—The appellant was charged by way of second amended affidavit with the offense of reckless homicide as defined by §52, ch. 48, Acts 1939, being §47-2001 of Burns' 1942 Repl. His motion to quash was overruled, whereupon he entered a plea of not guilty. He waived trial by jury, was found guilty by the court, and was sentenced to imprisonment for six months at the Indiana State Farm. His motion for new trial was overruled and this appeal perfected.

The affidavit alleges, in substance, that the appellant was driving a loaded tractor semi-trailer unit in a southerly direction on U. S. 27, which was being re-surfaced by contractors who had installed one way traffic at the place where the collision occurred, and had provided a flagman to control traffic at that point and for six miles to the north had erected signs at frequent intervals warning that said highway was under construction and travel thereon was at the risk of persons using said highway. It further alleges that about twenty southbound vehicles had been halted and were standing in the southbound lane of said highway waiting a signal to proceed and the automobile of Vernon E. Brandt, in which Lawrence R. Summersett was a passenger, had reached the end of said line of cars

and had either stopped or was about to stop. That approximately 1600 feet north of the place where the Brandt car had stopped or was stopping there is a curve in said highway, and that the appellant operated his motor vehicle in a southerly direction in full daylight past said curve, from which point 1600 feet away the appellant had an unobstructed view of the highway and of the car occupied by Summersett.

The affidavit then charges, in great detail, that the appellant unlawfully drove with reckless disregard for the safety of others, and particularly Summersett, in that appellant did continue to operate the motor vehicle at a speed greater than was reasonable and prudent under the circumstances, enumerating them, and did further with reckless disregard of the safety of others, and particularly the safety of Summersett, fail and neglect to reduce the speed of his vehicle and bring the same under such control as would permit him to stop said vehicle before reaching the point where Brandt's car was stopped or about to stop, and did continue to operate and propel his vehicle into, upon and over the Brandt car with such force as to drive said car forward a distance of 200 feet into and through the cars ahead, by reason whereof Summersett suffered fatal injuries. The affidavit further alleges that such operation of the vehicle by the appellant was the proximate cause of the death of said Summersett.

Sec. 55 of ch. 48, Acts 1939, Burns' 1942 Repl., §47-2004, provides speed regulations for motor vehicles, and §60(a) of the same Act (Burns' 1942 Repl., §47-2009(a)) provides that:

"In every charge of violation of any speed regulation in this act, the complaint or affidavit, and the summons, warrant or notice to appear, shall specify the speed at which the defendant is alleged to have driven, and the prima facie or fixed speed applicable within the district or at the location."

The affidavit in this case nowhere alleges the actual speed at which the appellant drove, nor does it allege the prima facie or fixed speed applicable at or near the scene of the collision, and it is asserted that the appellant's motion to quash the affidavit should have been sustained because of the failure of the affidavit to meet those requirements of the above quoted statute.

Although the language of the section is somewhat obscure,[1] it seems quite apparent from a consideration of all of the language of the section and of the Act of which it is a part that the section is intended to apply only when the charge, or in other words the prosecution, is for the violation of a speed regulation prescribed by the Act, and not when the indictment charges a different offense such as reckless homicide or manslaughter.

In the affidavit the acts of commission and omission attributed to the appellant are repeatedly characterized as having been done or omitted with reckless disregard for the safety of others, and particularly of Summersett, but in three separate places in the affidavit the appellant's conduct is designated as being both reckless and negligent. Negligent conduct is not made criminal conduct by the Act. Considering the allegations of the affidavit as a whole, however, it is inconceivable that the appellant could have been confused or misled by the use of the word "negligent" in the affidavit. In the context in which the word is found

1. It might seem, as asserted by the appellant, that this section of the Uniform Act applies equally to criminal and civil actions. It has been held, however, that the section does not apply to civil actions. *Alendal* v. *Madsen* (1937), 65 S. D. 502, 275 N. W. 352; *Piner* v. *Richter* (1932), 202 N. C. 573, 163 S. E. 561; *Hausken* v. *Coman* (1936), 66 N. D. 633, 268 N. W. 430. The Uniform Act Regulating Traffic on Highways was declared obsolete by the National Conference of Commissioners on Uniform State Laws in August 1943, and is no longer recommended by the Conference for adoption by the States. See Handbook of the National Conference, 1943, p. 69.

in the affidavit, which charges the offense of reckless homicide with reasonable certainty, the word "negligent" seems to us to constitute only surplusage for which the pleading should not be condemned. *Musgrave* v. *The State* (1892), 133 Ind. 297, 32 N. E. 885; *Selby* v. *State* (1904), 161 Ind. 667, 69 N. E. 463; *Smith* v. *State* (1917), 186 Ind. 252, 115 N. E. 943; Burns' 1942 Repl., §9-1127(6).

The affidavit alleges in great detail the conditions of the traffic, roadway, etc. under which the appellant drove his vehicle at and just prior to the collision, but it does not allege that the appellant knew of those conditions or of any danger that might lie ahead of him. The affidavit alleges conditions which were open and obvious to any traveler on the highway in broad daylight. That being the case, we cannot believe the affidavit was defective in failing to allege that the appellant had knowledge of them.

The evidence discloses that on October 15, 1951, U. S. 27 was being resurfaced at a point just north of the town limits of Waterloo, Indiana. At that point the road makes a bend to the east and then extends slightly north and east until it bends to the north in a long curve. At the time of the accident there were some twenty or twenty-five southbound automobiles and trucks stopped and waiting their turn to pass the construction machinery at which point one-lane traffic was being maintained. For several miles signs were maintained at intervals to the north which read "Road under construction—Travel at your own risk."

The appellant, driving a heavy tractor and semi-trailer outfit loaded with twenty-two thousand pounds of steel castings, approached the point where the traffic was stopped. When he rounded the curve at the east end of the straight stretch on which the traffic was stopped, two or three automobiles were still moving

at the rear end of the line of stopped vehicles. As he rounded the curve, he was more than sixteen hundred feet away from the vehicles stopped or stopping for one-way traffic. It was daylight on a clear day. The road was level, the pavement dry, and appellant's vision was wholly unobscured.

There is evidence that the appellant was driving fifty-five to sixty miles per hour when coming around the curve, and that his speed was reduced but little up to the time he crashed into the line of traffic. The ensuing disaster, as shown by the photographs in evidence, would be difficult to describe. Summersett was killed outright, several others in various cars were most grievously injured, and eight cars were damaged, some being practically demolished.

The Brandt car, in which the deceased was riding, was the last car in the line of traffic. The appellant testified he was driving approximately forty miles per hour. Although there is no evidence that appellant's attention was diverted at any time, he testified that when he first noticed the line of traffic was stopped he was only two hundred fifty or three hundred feet away from it, and he then applied the brakes; that the brakes, which would have stopped the equipment in that distance or less if they were working, refused to work, thus accounting for the collision.

In challenging the sufficiency of the evidence to sustain the finding, the appellant takes the position that he was guilty of negligence only, since it could only be inferred from the evidence in this case that through inadvertence, lack of attention, or error of judgment, he did not see or realize that the traffic ahead had stopped until it was too late to avoid the collision when he discovered that his brakes would not hold.

Our statute defines as reckless homicide the driving of a vehicle with reckless disregard for the safety of

others, thereby causing the death of another. The statute further provides that the offense may be based, depending upon the circumstances, upon driving recklessly against the person, car or other property of another, or driving in any other specified manner in which the driver is heedless of probable injury to the safety, property or rights of others. Proof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtlessness of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide. The state does not contend it will do so.

In *Armstrong* v. *Binzer* (1936), 102 Ind. App. 497, 199 N. E. 863, the Appellate Court, considering the meaning of the words "reckless disregard for the rights of others" as written into a statute relating to civil liability growing out of the operation of an automobile, said:

> " 'Reckless disregard of the rights of others, as used in the Indiana Guest Statute, means where the owner or operator of an automobile voluntarily does an improper or wrongful act, or with knowledge of existing conditions, voluntarily refrains from doing a proper and prudent act, under circumstances when (where) his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that an accident may occur.' ".

That case was decided, and transfer denied, prior to the enactment of ch. 48, Acts 1939, and it is proper to assume, as is said in *State* v. *Beckman* (1941), 219 Ind. 176, 37 N. E. 2d 531, that the General Assembly had that fact in mind when the statute here under consideration was enacted. It will be seen from the foregoing that a reckless disregard for the safety of

others involves a conscious choice of a course of action which injures another, either with knowledge of the serious danger to others involved therein, or with knowledge of facts which would disclose the danger to any reasonable man. Restatement, Torts, §500 g.

We think the appellant's position as above stated is based upon the assumption of facts most favorable to the accused rather than those favorable to the state. The evidence with respect to the condition of the brakes was conflicting and such that the court could find that the collision did not result from a failure of the brakes as testified by the appellant. There was conflict with regard to the speed at which appellant was traveling, and although he testified he did not notice the stopped traffic until he was within two hundred fifty or three hundred feet of it, it could be inferred from the other evidence that such was not the case.

If, as the trial court apparently found, the appellant's brakes were in working order, it follows of necessity that the collision could only have occurred by reason of the appellant's failure to make timely application of them under conditions of danger of which he must have been aware, but instead continued on with apparent heedless indifference to the results that might follow. The evidence was sufficient to sustain the finding of the trial court.

The appellant relies on *Dierickx* v. *Davis, Agent* (1932), 80 Ind. App. 71, 137 N. E. 685. The Appellate Court said the evidence in that case failed to establish an inference of willfulness for the reason that it would do violence to both reason and conscience to infer that the engineer or fireman of a railroad train would consciously, knowingly, intentionally, designedly and willfully disregard their duty to look for danger signals, or that the engineer would, in like manner, run his train

against another train. The court reasoned that the instinct for self preservation and man's natural reluctance to injure another left no room for such an inference.

But while the intention to do or omit the act resulting in injury to another is a necessary ingredient of reckless homicide, willfulness in the sense of a design, purpose, or intent to inflict an injury is not a necessary element of the offense. In other words, to be guilty of a reckless disregard for the safety of others, it is not necessary that one intend the harm which results from it. It is sufficient that the actor realizes, or should realize, that there is a strong probability that such harm may result. See *Rogers* v. *Doody* (1935), 119 Conn. 532, 178 Atl. 51. We know only too well, from common experience, that human behavior sometimes cannot be reconciled with reason, and that drivers who are guilty of a reckless disregard for the safety of others are very frequently, by the same act or omission, guilty of a reckless disregard for their own safety and welfare. The fact that, in taking chances which no reasonable man would take, they do not actually intend to kill or maim others should not and will not relieve them of the consequences of their reckless disregard for the safety of others.

In addition to testimony concerning the speed at which appellant was driving at and near the scene of the accident, testimony was admitted over appellant's objection which went to the speed at which the tractor trailer was being operated a mile to a mile and a half back, and it is asserted this testimony was too remote and should therefore have been rejected. The affidavit does not allege an isolated act or omission; it charges, and the evidence discloses, a "course of conduct" on the part of the appellant which culminated in the death of Summersett. In such a case it was not necessary to restrict proof of the

speed at which the appellant was driving at the precise point of impact. It is true that motor vehicles may readily be accelerated and decelerated, but it is also true that a motor vehicle is capable of traveling miles in minutes. Compare *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836. In the setting of this case, we feel there was no error in admitting this evidence.

Objection was made to the testimony of a police officer concerning his conversation with the appellant at the hospital after the collision had occurred. Error in the admission of this testimony, if any, was harmless since the appellant himself testified to the same facts on the trial of the case.

The equipment belonged to the appellant's employer. After the collision an examination disclosed the brakes to be in working order. No rights of the appellant were infringed by the examination of the brakes. We think the testimony relative to the condition of the brakes after the collision did have probative value. In *Turrell* v. *State* (1943), 221 Ind. 662, 51 N. E. 2d 359, advanced by the appellant as an authority to the contrary it was held that testimony concerning the condition of brakes after an accident had occurred was lacking in probative value in the absence of evidence going to show that the brakes were in the same condition when they were examined that they were in when the accident occurred. This was on the theory that the force of the collision itself might explain an injury to the brake system. This case differs from that case in that the evidence here goes to show that the brakes were in working order after the collision. It could not reasonably be supposed that the collision would repair brakes which were out of order before the collision occurred.

The appellant raises several other questions which involve, with one unimportant exception, the admission or rejection of evidence. We have examined each of these contentions, some of which are wholly unsupported by authority or reason, and feel we would not be justified in extending this lengthy opinion by a detailed discussion of them. In our opinion no ruling involved in any of them, assuming they were erroneous, could have affected the substantial rights of the appellant.

Judgment affirmed.

NOTE.—Reported in 115 N. E. 2d 919.