WASSON *v.* STATE OF INDIANA.

[No. 30,125. Filed June 27, 1962. Rehearing denied September 24, 1962.]

*Albert W. Ewbank,* and *Joseph Mazelin,* of counsel, both of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

ACHOR, J.—Appellant was indicted for reckless homicide and involuntary manslaughter arising out of an auto accident in which one Jack Lee Wheeler suffered fatal injuries. Appellant was found guilty of both charges by a jury. However, the court pronounced judgment only upon the charge of reckless homicide.

The sole assignment of error is the overruling of appellant's motion for new trial. The only specification in the motion for new trial here argued on appeal is that the verdict is not sustained by sufficient evidence.

The statute upon which this action is grounded reads as follows:

"Any person who drives a vehicle with reckless disregard for the safety of others and thereby

causes the death of another person shall be guilty of the offense of reckless homicide. Any person convicted of reckless homicide shall be punished. . . ." §47-2001, Burns' 1952 Repl. [Acts 1939, ch. 48, §52, p. 289.]

A definition of the phrase "with reckless disregard for the safety of others" in a reckless homicide case was stated by this court in *Beeman* v. *State* (1953), 232 Ind. 683, 690-691, 115 N. E. 2d 919, as follows:

> "[A] reckless disregard for the safety of others involves a conscious choice of a course of action which injures another, either with knowledge of the serious danger to others involved therein, or with knowledge of facts which would disclose the danger to any reasonable man." See: *Patton* v. *State* (1962), 242 Ind. 477, 179 N. E. 2d 867.

The record in this case discloses that, at about 7 P.M., on July 25, 1959, appellant, his wife, and one Suzanne Wheeler went to a drive-in movie and thereafter, at about 12:30 P.M., picked up the decedent at his place of employment on the south side of town. All four then went to the Pole Drive-in on West 16th Street in Indianapolis for refreshments. While in the car they engaged in a conversation with occupants of an adjacent red convertible on the subject of how fast cars would go, and "carburetors and things like that." A conversation ensued between the appellant and his wife, after which she got out of the car stating that she "did not want to go driving like that." The appellant, who had twice previously been convicted of speeding, the decedent, and Suzanne Wheeler then drove around to the side of the drive-in to its parking place. Appellant got out of the car and conversed further with the occupants of the red convertible and he then returned to his car. Appellant, with

the decedent and Suzanne Wheeler, then proceeded west on 16th street. The red convertible drove out with appellant, but dropped back, and another car, a '57 Ford, pulled up. Both appellant's car and the '57 Ford were then traveling abreast at about 50 miles per hour in a posted 40 mile per hour speed zone. Appellant's car was on the right and the other on the left.

Thereafter the record discloses that the evidence most favorable to the state in support of the judgment of the trial court is as follows: Deputy Marshal, Ronald D. Vance, of the Speedway Police Department, first observed the cars at about the 4500 block on West 16th street. The officer followed in pursuit, which continued 2.4 miles to the time and place of the fatal collision, with both cars maintaining substantially the same positions during all the pursuit.

At 16th street and Highway 136 both cars "caught the red light and momentarily slowed." Both cars turned northwesterly onto 136. At that point Officer Vance came within 50 or 60 yards of the two cars. At Auburn and Highway 136 the cars were traveling at a speed of about 60 miles per hour. There the officer utilized the red blinker light on his patrol car in an attempt to stop both vehicles. Instead, they accelerated their speed. They drove through the Lyndhurst intersection, which is guarded by a flasher stop signal, at a speed in excess of 75 miles per hour.

At this time the officer turned on the siren (in addition to his red blinker light). Both cars continued to accelerate their speed. The officer was, at that point, about 60 yards to the rear of the said cars. The light and siren remained on for the remaining three-fourths of a mile until the crash occurred. There is a curve on Highway 136 in the 5700 block.

There the car next to appellant's went off the road, hit the inside guard rail and spun back alongside appellant's car. At this time both cars were exceeding 90 miles per hour and continued to accelerate their speed. At about the 6000 block the dual lanes converge into a single lane. Prior thereto warning signs were erected proclaiming the end of the divided highway. At this point the officer slowed down so that the other automobiles would do likewise before converging upon the single lane of travel but, instead, they continued to accelerate their speed and were approaching 100 miles per hour in a posted 50 miles per hour zone, traveling side by side, when they tried to crowd into the single lane of traffic. There appellant's car, which was adjacent to the berm, went onto the right berm where it slid 117 feet. During this time the other car proceeded down Highway 136. Appellant's car then went back across the road where it slid 247 feet into a concrete abutment. The car flipped up in the air and exploded. Jack Lee Wheeler, one of the occupants in appellant's car, died of the injuries which he sustained in the collision. At the hospital the officer asked appellant if he saw the caution sign warning of the converging lanes of traffic, and he said he did. The officer asked appellant why he did not stop (in response to his signals) and appellant said he did not know.

Suzanne Wheeler, the other occupant of appellant's car, testified that she did not recall any attempt of the '57 Ford to push the appellant's auto to the side of the road; that she informed appellant that the police car was behind, that he did not apply his brakes for "maybe one or two" minutes.

Appellant predicates his defense upon two theories: First, that he was the innocent victim of a "party of

hoodlums" who attempted to force him off the highway in a sporting game commonly called "chicken," and that appellant's only recourse against being forced off the road was to outdistance the other car by traveling at a faster speed. The evidence in the record does not sustain appellant's contention. Second, that there was no evidence of misconduct on appellant's part except that of the speed at which he was driving. He asserts that speed alone is not sufficient to prove willfullness and recklessness in the driving of an automobile.

Without expressing an opinion on that issue we do, however, note that we are not here presented with the fact of excessive speed alone. There are attending circumstances which, to appellant's knowledge, added to the hazardous condition under which appellant drove his car. Appellant drove in close proximity to another automobile. He crossed several intersecting streets and highways—including one at which both cars drove through a red light. He was avoiding a traffic officer who was in pursuit. He drove around a curve abreast of the other car at 90 to 100 miles an hour. Appellant tried to force his way into a single lane of travel against the other car which was traveling abreast at a speed of nearly 100 miles an hour.

Thus there was ample evidence from which the jury could conclude that the appellant operated his automobile with reckless disregard for the safety of others, in that he operated it with a conscious choice as to his course of action, with knowledge that such conduct was likely to result in serious injury to other persons involved. *Beeman* v. *State, supra; Patton* v. *State, supra.*

Judgment is, therefore, affirmed.

Arterburn, C. J., Bobbitt, Jackson and Landis, JJ., concur.

NOTE.—Reported in 183 N. E. 2d 604.