WAGNER v. STATE OF INDIANA.

[No. 30,146. Filed April 1, 1963.]

*Edward V. Minczeski,* of South Bend, for appellant.

*Edwin K. Steers,* Attorney General, *William D. Ruckelshaus,* Assistant Attorney General, and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

MYERS, J.—Appellant was charged by affidavit with burglary in the second degree. He was tried by a jury and found guilty as charged. He was sentenced to the Indiana State Prison for a period of not less than two nor more than five years, and was disfranchised for a period of ten years.

Appellant was a resident of Mishawaka, Indiana, in October, 1960. This is a city in northern Indiana adjacent to the city of South Bend. At one time he worked for the Jewel Tea Company of South Bend for a period of five months, but quit two or three months before the alleged burglary. The Jewel Tea Company was a national concern, operating throughout the United States, selling merchandise at retail from house to house. In the metropolitan area of Mishawaka and South Bend it had eleven storerooms which were stocked with groceries, clothing, merchandise, miscellaneous articles, "regular department store type of thing, handle a little bit of everything." One of these stockrooms was located at 2217 West Bertrand Street in South Bend.

On the morning of October 14, 1960, a driver of a company truck, who operated from these premises, discovered that they had been broken into and entered. Certain items were missing and there was much disarray. Later, appellant and two other men were arrested and charged with the crime. The two others, being Ralph Wyatt and John Vermillion, pleaded guilty to the charge. Vermillion had been sentenced and Wyatt was awaiting sentence at the time of trial.

Wyatt's testimony implicated appellant fully. At the trial, as a witness for the State, he related that all three of them got into Vermillion's car, after spending the evening at a tavern, stopped by Vermillion's home to pick up a tire tool, and then drove to the Bertrand Street address. Appellant broke the lock on the door of the stockroom with the tire tool. He and Wyatt went inside and carried out various boxes of merchandise which they put in the car. They drove to an empty house in Mishawaka, next door to appellant's cousin's house, where all three of them transported the boxes into the house. They parted, appellant going to bed in his cousin's house. Later on in the day, Wyatt and appellant, together with Donald Fairchild, buried the merchandise by a creek after wrapping it in tarpaulin.

Vermillion testified that the three of them sat around in the tavern and drank beer until it closed. Then they got into his car and let appellant off at his girl friend's house, somewhere in Mishawaka or South Bend. Vermillion admitted that he and Wyatt drove on and took part in the robbery, although Vermillion did not help bury the merchandise. He said that after he had been apprehended and was at the police station, he "probably" signed a statement which implicated appellant in the crime, but that he did not know what it was at the time. He gave a garbled account of signing it while drunk, not wanting to "mess up" his probation. He said if he signed it and implicated appellant, he lied about it. This statement was not introduced in evidence.

Fairchild stated that he helped take the stolen items in his car from the empty house and assisted in burying them. He said they consisted of silverware, blankets and "stuff like that." There were also

two pairs of trousers which he kept in his car for himself. He identified two ironing-board covers and a sheet which he said he saw at the creek where they were buried. He had pleaded guilty to receiving stolen goods and was awaiting sentence.

Appellant testified in his own defense, stating that he had been with Vermillion and Wyatt until 2:00 o'clock in the morning of October 14, 1960, but after they left the tavern he became sick and they let him out at his girl's house in Mishawaka. He could not arouse her, so he walked back to a place called the Burger Spot where he met his half-brother. After a fight, he left with some unknown fellows and vaguely remembers being at some people's house near Niles, Michigan. Then he returned to his cousin's home and went to bed. Later in the day he got up and admitted to assisting in burying the stolen boxes. He further testified that he had previously been in a fight with Wyatt at his cousin's house and had "beat the tar out of him." At the time he was on parole for second-degree burglary.

In argument, appellant's first specification of error is that the court erred in overruling his motion for new trial, which is based upon the grounds that the verdict is contrary to law and not sustained by sufficient evidence. As the grounds in this specification were similar, they were grouped together for argument. The contention is that there was no direct evidence in the record as to ownership of the goods allegedly stolen; that there was no clear evidence to indicate the merchandise was in fact the property of the Jewel Tea Company.

Evidence of ownership in a second-degree burglary case may be proven by circumstantial evidence.

*Rucker* v. *State* (1948), 225 Ind. 636, 77 N. E. 2d 355. The district manager testified that the burglarized stockroom was leased to the Jewel Tea Company. A driver-salesman who operated from those premises said the stock he used came from that stockroom and had been delivered there from Bennington, Illinois, in a truck driven by another employee of Jewel Tea Company. He identified an ironing-board pad and cover set which was a State's exhibit, being one of the items buried at the creek, as being similar to a set sold by the company, and pointed out that this particular set had the Jewel name and number, as well as his handwriting, on it. Other items found in Fairchild's car, such as sheets and a sample box of clothing, were identified as the same type of merchandise handled by the company and bore the Jewel number on them. From this evidence, the jury could have inferred that the personal property, the subject of the burglary, was owned by the Jewel Tea Company. *Stokes, alias Coleman* v. *State* (1954), 233 Ind. 300, 119 N. E. 2d 424. A conviction may be sustained wholly on the basis of circumstantial evidence if there is some substantial evidence of probative value from which a reasonable inference of guilt may be drawn. *McCoy et al.* v. *State* (1958), 237 Ind. 654, 148 N. E. 2d 190.

Under this first specification of error, it is also argued that appellant was "presumably" incapable of forming the requisite intent to commit a felony because he was "completely drunk." No authority is cited to support this contention. However, the well-settled rule is that in determining the sufficiency of the evidence in the record of the trial court, this court will consider only that evidence most favorable to appellee, which is the State

herein. *Music* v. *State* (1959), 240 Ind. 54, 161 N. E. 2d 615. This is to the effect that appellant left the tavern with Vermillion and Wyatt around 2:00 o'clock in the morning. They drove to the stockroom, after stopping for the tire tool, where appellant and Wyatt got out of the automobile and appellant used the tire tool to break the lock of the door. They entered the building and both of them carried between twelve and fourteen boxes out and placed them on the back seat of the car. They then drove to the vacant house where all three of them put the boxes inside.

Intoxication is a question of fact. *Istrate* v. *State* (1928), 200 Ind. 370, 163 N. E. 594. We are of the opinion that there was sufficient evidence from which the jury could have found that appellant's consumption of beer did not deprive him of the mental capacity to form an intent to commit the burglary.

The second specification of error is that the court erred in not ruling on appellant's amended motion for new trial and "did not note its filing for record." At page 27 of the transcript there is a record and order book entry of the filing of the motion for new trial, dated June 27, 1961. At page 28 it is shown that the court overruled this motion on July 14, 1961. Inserted between these two pages is a copy of the purported amended motion for new trial, signed by appellant *pro se*. The page is shorter and not the same type or material as the rest of the pages in the transcript. It is numbered page 27 A.

On August 28, 1961, appellant filed a notice of appeal, stating that appellant would perfect an appeal to the Supreme Court, "seeking to overrule the Order of this Court denying the Motion for New Trial heretofore filed by the defendant." It was signed

by appellant *pro se.* On the same date, he filed a motion for appointment of counsel. In this he alleges that he filed an amended motion for new trial on July 7, 1961, presenting as a ground the question of the competency and adequacy of his trial attorney. He asked for the appointment of another attorney to handle his appeal. The court did not rule on this motion, but there is an entry that counsel was appointed. He appeared for defendant on September 5, 1961, and filed the praecipe for the transcript. It is contended that the court's action therein "apparently approved" the allegations in the petition that the amended motion for new trial was filed prior to the date the original motion for new trial was overruled. In other words, appellant is attempting to say that the amended motion was the motion the court actually overruled and that he thus saved for appeal additional errors set forth therein.

There is no order book entry of this amended motion, nor any showing of a docket entry, nor any indication that it was filed, or that it was ever received by the court, to be found in the record except as contained in appellant's own statement in his motion for appointment of counsel. It is to be noted that in his notice of appeal appellant does not refer to an amended motion, but rather to the court "denying" his Motion for New Trial. However, the transcript imports absolute verity of the proceedings which took place in the trial court. It is properly certified by the Clerk of the Court. The amended motion is included in the transcript, being page number 27 A. No question is raised that the transcript was tampered with, so we shall assume that it is properly a part of the record in spite of the unorthodox manner in which it presents itself, and we shall take up the additional points raised therein.

. These points refer to the negligence and inadequacy of· counsel at the trial and specifically state that he failed to file notice of alibi ten days prior to trial,. as required by §9-1631, Burns' Ind. Stat., 1956 Replacement. By reason of this failure, appellant alleges that the jury was deprived of hearing evidence of a nonresident witness living in Niles, Michigan, and further deprived of hearing the testimony of appellant's half-brother who was present at the trial and tried to testify on behalf of appellant. It is admitted, however, that the court's ruling in denying this testimony was correct, but it is urged that the attorney was remiss and, consequently, appellant was not adequately represented at the trial.

Specifications of error III to and including VI argue these points and elaborate on the inadequate repre-. sentation in that· the trial counsel did not request. a. continuance in order to present the. alibi; that he did not object to certain hearsay statements; that he did not request the court to admonish the jury in reference to certain of appellee's witnesses; that he tendered no instructions concerning the testimony of these witnesses and their credibility as such.

This court has held. that it will not reverse a judgment· of conviction upon mere suspicion that .the defendant was not efficiently defended by .his attorney. *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321. On the issue of competency of counsel, we have stated the following:

"However, even if we should conclude from an examination of the record that appellant's trial counsel made errors of judgment at the trial of this cause, we could not conclude therefrom that such conduct constituted incompetency on the part of counsel. Even the best of attorneys may, during the course of a trial, make decisions which

may later appear to be mistakes in judgment. They are the natural result of the imperfections of man, and are circumstances which cannot be avoided, but must be expected. As the court said in *Hendrickson* v. *State* (1954), 233 Ind. 341, 344, 118 N. E. (2d) 493, 495, 'We cannot "second guess" a trial attorney and reverse a case simply because some other attorney might, under the attending circumstances, have pursued a different course.'" *Haley* v. *State* (1956), 235 Ind. 333, 340, 133 N. E. 2d 565, 568.

We do not believe there was a proper showing here of negligence and inadequacy on the part of trial counsel such as to cause reversal.

In specification VII appellant claims error in that the court denied a pre-sentence investigation after a request had been made for one pursuant to the provisions of §9-2252, Burns' Ind. Stat., 1956 Replacement (Supp.).

The record shows this to be specification of error No. 7 in appellant's assignment of errors. It is not contained in the motion for new trial or the amended motion for new trial, although the request was denied on June 21, 1961, at time of sentencing, and the original motion for new trial was filed six days thereafter, on the 27th day of June, 1961. Supreme Court Rule 2-6 reads in part as follows:

"In all cases in which a motion for new trial is the appropriate procedure preliminary to an appeal, such motion shall be filed and shall separately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing of such motion, and an assignment of error on appeal to the effect that the trial court erred in overruling said motion shall be the only means of raising said asserted errors on appeal. . . ." (Effective September 1, 1960.)

Appellant did not properly save this as a question to be considered on appeal, and thus it is waived.

Specification VIII says that the following portion of the sentence imposed upon appellant is error:

". . . and be disfranchised and rendered incapable of holding any office of trust or profit for a period of ten years; . . ."

It is urged that this is in excess of the court's jurisdiction. No authority is cited for this argument. The penalty clause of the statute on second-degree burglary, being §10-701, Burns' Ind. Stat., 1956 Replacement, reads as follows:

". . . and upon conviction shall be imprisoned not less than two [2] years nor more than five [5] years and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period: . . ."

Appellant was disfranchised for ten years, which is a determinate period of time and within the wording of the statute. If appellant believed this was excessive, he should have filed a petition to modify the sentence pursuant to Supreme Court Rule 2-40B.

Judgment affirmed.

Achor, Arterburn and Landis, JJ., concur.

Jackson, C. J., concurs in result of all but last paragraph of opinion, to which he dissents.

NOTE.—Reported in 188 N. E. 2d 914.