BUTLER *v.* STATE OF INDIANA.

[No. 767S41. Filed July 12, 1968. Rehearing denied October 7, 1968.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Richard V. Bennett,* Deputy Attorney General, for appellee.

PER CURIAM.—This is an appeal from the judgment of the Criminal Court of Marion County, Division No. 1 in which the appellant was charged with the crime of robbery and also found guilty after a trial before the Judge without a jury. The trial was held jointly with one, Seth E. Smith, who was also found guilty. The appellant had consented to the joint trial as well as waiving a trial by jury.

After his conviction, a motion for a new trial was filed pro se which was overruled. Thereafter, an amended motion for a new trial filed by his counsel was also overruled. The overruling of the amended motion for a new trial is the only error assigned by appellant. Appellant's amended motion for a new trial is based upon the single ground of insufficient evidence before the trial judge.

The facts brought out by the record were these: John Hatch was the night attendant at the Wake Up Oil Company station, 4101 Fall Creek Boulevard, Indianapolis, Indiana, and was working alone at about 3 A.M. on the 13th of October, 1966, when a man approached him with a gun. This man was Seth Smith who is charged with robbery in the same affidavit with the appellant. The testimony of Hatch was as follows:

> "A. But automatically I put my hands up, and he says, well, get your hands down and get in there. So he pushed me in the lavatory and put my head against the wall and tied me up, threw a towel over my face."

The further testimony of Hatch indicated the following:

> "A. He tied me up and then took, took my money changer off of my stomach, and breathing very hard at the time, and at that moment I heard another voice says, well, he's got more money than that, get it, get his money. And at that time I heard him say something else, it was not distinguishable, but all of a sudden he stopped doing what he was doing and just stood there next to me and . . .
>
> Q. When he stopped doing what he was doing, meaning who, are you still talking about Mr. Smith?
>
> A. The gentleman that was in the rest room with me, Smith.
>
> Q. Mr. Smith. Okay.
>
> A. And I heard this other gentleman, I didn't know him at the time, say that, it was undistinguishable, but something about somebody's coming or something, and that . . ."

The evidence indicated the appellant had been identified by a police officer who was cruising down Fall Creek Boulevard, and who testified he saw the appellant and Smith prying on a filing cabinet in the Wake Up Station. The identification of the appellant was positive. The testimony further indicates that after the officer approached the station two men left the station. Thereafter, Hatch came out of the rest room and the officer saw the rope on Hatch's hand and heard Hatch yell,

and the officer pursued the men. The appellant was apprehended approximately ten (10) feet from the building. Hatch's testimony, *supra,* indicated that he was pushed into the rest room at gun point, that he heard another man besides Smith, indicating complicity in the crime.

The appellant took the stand and indicated he was present at the scene of the crime, but was not a participant, contrary to the testimony of John Hatch and the policeman Marshall. The appellant also stated as follows:

"Q. What time did you see him?
A. Well, it was approximately two (2:00) o'clock.

Q. And where?
A. On Illinois and Market at the Fenderick's restaurant is when I first saw him.

Q. Where had you been prior to that?
A. Well, I well, before I saw him I had just got off from work. I was working at Stark and Wetzel at the time, and I had just got off from work and I stopped in to get me a sandwich and a cup of coffee before I was on my way home, and he came by and saw me sitting in the restaurant. . . ."

The state offered in rebuttal testimony by officer John Sibbons as follows:

"Q. What's your name and occupation?
A. John Sibbons, Police Officer, City of Indianapolis.

Q. And you are now assigned to the Prosecutor's office as an Investigator, is that right?
A. That's right.

Q. And you are acquainted with Charles Lee Butler, a defendant in this cause?
A. I am.

Q. Calling your attention to the twelfth day of October, 1966, did you have occasion to see him?
A. Yes, I did.

Q. Where?
A. In the alley which is Wabash Street beside the bus

station, and also in the restaurant, which was Fenderick's, 102 North Illinois Street.

Q. About what time?

A. The first time I saw him it was approximately nine (9:00) p.m., then I saw him again walking up the alley, or Wabash Street, at . . .

Q. How do you remember seeing Mr. Butler?

A. I know him. I've had complaints on him numerous times. And I have .seen him around the bus station and in Fenderick's restaurant numerous. And I have chased him out of the bus station numerous times.

Q. And you saw him between nine (9:00) and ten (10:00) at night on the twelfth?

A. Nine (9:00) and also at ten thirty (10:30).

Q. Okay.

A. Or ten twenty (10:20) it was."

The rule is well settled that a conviction will be sustained if there is evidence of the facts essential to support the judgment; *Mathews* v. *State* (1967), 248 Ind. 563, 10 Ind. Dec. 715, 228 N. E. 2d 1. Furthermore, when the question of the sufficiency of evidence is raised on appeal the Supreme Court will consider only that evidence most favorable to the state together with all the reasonable inferences to be drawn therefrom; *Fisher* v. *State* (1966), 247 Ind. 529, 9 Ind. Dec. 108, 219 N. E. 2d 818. The Supreme Court likewise on appeal will not weigh the evidence or determine the credibility of the witnesses; *Stock* v. *State* (1966), 247 Ind. 532, 9 Ind. Dec. 121, 219 N. E. 2d 809. In *Fisher* v. *State, supra,* the court stated "The credibility of the witness is to be determined by the trier of fact and this court will not determine the credibility of witnesses."

Since we find no error in the proceedings below, the judgment of the trial court is affirmed.

Jackson, J., dissenting without opinion. Mote, J., not participating.

NOTE.—Reported in 238 N. E. 2d 447.