KIDWELL v. STATE OF INDIANA

[No. 1264S155. Filed October 6, 1969. Rehearing denied January 26, 1970.]

*William C. Erbecker,* Indianapolis, for appellant.

*John J. Dillon,* Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment in two counts: involuntary manslaughter and reckless homicide. A court trial without the intervention of a jury resulted in a finding of guilty on the second count of reckless homicide.

The record shows that on the 6th day of August, 1966, at approximately 10:25 P.M. the deceased, Gary Wayne Chadwick, was proceeding south on South West Street in the city of Indianapolis riding a Mopad Sears motorcycle. At the same time the appellant was traveling in the same direction on the same street operating a 1964 Ford automobile. Accompanying him in the front seat of his automobile was one Paul Good and his wife, Shirley Good, who testified at the trial. The car driven by the appellant struck the motorcycle driven by the deceased from the rear as more particularly described hereafter.

The appellant contends there was insufficient evidence that he was under the influence of intoxicating liquor at the time

of the collision. In support of this he points out that although David Simpson, Police Officer of the City of Indianapolis, testified that there was a smell of alcohol on the defendant's breath at the time of the accident and that he spoke with slurred speech, the witness was unable to state whether or not he was under the influence of alcohol.

Another witness, Raymond Stratten, a Police Officer of the City of Indianapolis, testified that he talked to the defendant while he was seated in the police car at the scene; that he smelled alcohol on his breath; that based upon this observation he was of the opinion that the defendant was under the influence of alcohol, and that he was unfit to drive a vehicle.

The appellant takes the position that this was not sufficient evidence upon which the court could find that the defendant was under the influence of alcohol at the time. The foregoing certainly in itself was sufficient evidence upon which a trier of fact could determine that the defendant was in fact under the influence of alcohol. *Hensley v. State* (1969), 251 Ind. 633, 244 N. E. 2d 225, 16 Ind. Dec. 479.

A recitation of the facts concerning appellant's condition as observed by witnesses may be submitted to the trier of fact and it is its prerogative to determine from those facts whether or not the defendant was under the influence of intoxicating liquor at the time. *Wagner v. State* (1963), 243 Ind. 570, 188 N. E. 2d 914, 1 Ind. Dec. 219.

In addition to the foregoing there was evidence that the appellant had been to a wedding reception where alcoholic beverages were served immediately prior to the accident, where he admitted drinking "at least one beer." In addition, the physical evidence concerning the accident shows that the appellant's automobile began leaving skid marks 218 feet before the point of impact on dry pavement; that upon impact the body of decedent was thrown down the road 164 feet;

the motorcycle upon which he was riding was thrown forward and to the left 150 feet from the point of impact, and the defendant's automobile traveled forward and to the left from the point of impact across a ditch and through a fence for a distance of 164 feet. From these facts the court was justified in concluding that the defendant was under the influence of alcohol sufficiently to cause him to slide his car a distance of 218 feet before striking an object as small as a motorcycle on a road which had no other traffic at the time. Reasonable men could infer that a person in charge of all his faculties could easily in such a distance have guided his car around the motorcycle.

In this case the speed of the vehicle was a question of fact to be determined by the court based on the direct evidence of the measurement of the skid marks, the violence of the impact and the distance the vehicle traveled after the impact. Although expert evidence might have been submitted to aid the trier of fact in its determination, it is certainly not necessary in this or any case where the trier of fact is given the specific data from which the conclusion is to be drawn. *Ray v. State* (1954), 233 Ind. 495, 120 N. E. 2d 176, 121 N. E. 2d 732.

The trier of fact is entitled to draw logical inferences from the evidence submitted. *Hudson v. State* (1957), 236 Ind. 237, 139 N. E. 2d 917.

The speed of the vehicles involved was a question of fact to be determined by the court based upon the evidence. See *Briney v. Williams* (1968), 143 Ind. App. 691, 242 N. E. 2d 132, 16 Ind. Dec. 182.

The appellant himself had stated to the investigating officers at the scene that he was traveling between 45 and 50 miles an hour in a 35 mile an hour zone. Two passengers in his automobile had testified before the Grand Jury that

he was going 50 to 55 miles an hour, whereas their testimony at the trial of the cause was that he was going 35 to 40 miles an hour.

The appellant also states there was uncontradicted evidence of three witnesses at the trial that the decedent was stopped in the middle of the street with the lights off on the motorcycle. These three witnesses are the defendant himself and his two passengers in the automobile. One of these witnesses, Paul Good, stated that he had had eight or nine beers at a wedding reception just prior to the accident, but that in his opinion he was not under the influence of alcohol; that he first saw the motorcycle when it was only 100 feet in front of them, at which time he yelled and as he yelled the appellant applied the brakes. He also testified that the motorcycle was stopped and unlighted. He further testified in his opinion the appellant was not under the influence of alcohol at the time of the accident. As above shown the skid marks from the application of brakes to the point of impact measured 218 feet. The other witness was Paul Good's wife, who was also seated in the front seat with her husband and the appellant. She testified at the trial that she saw the motorcycle before it was hit and it had no lights on it, yet in her testimony before the Grand Jury she stated that she did not see the motorcycle before it was struck. The appellant himself testified that he did not see the motorcycle until he was 75 to 100 feet from it, and it was sitting still and was not lighted. We cannot say that such testimony is testimony which the court was bound to believe. It was within the province of the court to determine how far the automobile was from the motorcycle at the time the brakes were applied and to make his determination from all of the evidence, including the close friendship of the Goods with the appellant, as to how much, if any, of their testimony he would believe.

The only other evidence concerning the lights on the motorcycle is that when the decedent left a ball park some two

miles from the scene of the accident the lights on his motorcycle were lighted. There was also evidence that the motorcycle had reflectors on the rear which would have shown in the headlights of appellant's automobile even had the tail light not been working. In addition, as above pointed out defendant's automobile slid over 218 feet on dry pavement before he actually struck decedent's motorcycle, a fact from which the court could conclude that the speed was excessive and that defendant's reactions were slow, otherwise he would have simply driven around the decedent. The court was justified in finding that the combination of appellant's intoxication and his excessive speed constituted a wilful and wanton reckless disregard for the safety of others sufficient to render him guilty of reckless homicide. *Broderick v. State* (1968), 249 Ind. 476, 231 N. E. 2d 526, 12 Ind. Dec. 168.

Appellant in his reply brief has cited the case of *Carter v. State* (1968), 250 Ind. 50, 234 N. E. 2d 850, 13 Ind. Dec. 442, and tries to describe a parallel of the facts in the *Carter* case and those in the case at bar. However, we see no parallel. In the *Carter* case this Court speaking through Judge Hunter held that the fact that the driver of the automobile was under the influence of alcohol is not alone sufficient to establish a case of reckless homicide; that in addition to the intoxication it must be demonstrated that the intoxication and the reckless acts of the defendant were the proximate cause of the accident. In the *Carter* case the driver of the car was traveling approximately 40 miles per hour in a 60 miles per hour speed zone. The evidence was that he did not see the child who was struck but only heard the thump when the auto struck the child. He brought the automobile to a complete stop within 106 feet of the point of impact, even though there was evidence that he was under the influence of alcohol at the time. Judge Hunter correctly points out that there was no evidence that he was otherwise improperly handling his automobile and the evidence clearly indicated he had full control of his car

at all times, including his ability to stop immediately upon hearing the impact with the body of the child. In the case at bar there is ample evidence as above set out from which the court could determine that the appellant's intoxication coupled with his excessive speed combined to constitute the proximate cause of the death of the deceased.

An examination of the record in this case indicates that there was ample evidence upon which to base the court's decision of guilty of reckless homicide. This Court will not weigh the evidence to arrive at an opposite conclusion. *Gilley v. State* (1949), 227 Ind. 701, 88 N. E. 2d 759.

The trial court is, therefore, affirmed.

Arterburn and Hunter, J. J., concur; DeBruler, C. J., dissents with opinion in which Jackson, J., concurs in result.

## DISSENTING OPINION.

DEBRULER, C. J.—I would reverse this case on the grounds that there was insufficient evidence that appellant was under the influence of intoxicating liquor at the time of the collision, and that appellant drove his car in reckless disregard for the safety of the victim.

The indictment charged that appellant, while under the influence of intoxicating liquor, drove his car forty-five miles per hour in circumstances where thirty-five miles per hour was a reasonable and prudent speed, that such conduct was in reckless disregard for the safety of the victim, and as a result appellant collided with the victim's motorcycle killing the victim.

The meaning of the phrase "under the influence of intoxicating liquor" was set out in *Shorter v. State* (1955), 234 Ind. 1, 122 N. E. 2d 847, as follows:

" 'Under the influence of intoxicating liquor' are words in common use—they are not words of technical nature—

and are well understood by the laity, who know they refer to the impaired condition of thought and action, and the loss of the normal control of one's faculties to a marked degree, caused by drinking intoxicating liquors."

The appellant argues that the evidence in this case did not meet this test.

This Court's scope of review on a challenge to the sufficiency of the evidence is well settled. We do not weigh the evidence but look to that evidence and the reasonable inferences therefrom most favorable to the State. The conviction will be affirmed if from that viewpoint there is some evidence from which a reasonable trier of fact could infer the appellant was guilty beyond a reasonable doubt. *Carter v. State* (1968), 250 Ind. 50, 234 N. E. 2d 850; *Butler v. State* (1967), 250 Ind. 685, 229 N. E. 2d 471. This would, of course, imply that this Court cannot consider as evidence prior statements of witnesses used at trial to impeach the credibility of those witnesses.

The evidence supporting the finding that appellant was under the influence of intoxicating liquor at the time of the collision is as follows: Appellant with his passengers had just left a wedding reception where alcoholic beverages had been served and it was admitted that appellant had at least one beer. One of the three police officers on the scene was of the opinion that appellant was under the influence of intoxicating liquor. Officer Stratton, the chief investigating officer on this accident, testified concerning the intoxication of the appellant as follows:

"Q. Did you have conversation in your investigation with the defendant, with Wilbur Kidwell, Jr.?

A. I did.

Q. Did you have occasion to smell his breath?

A. Yes.

Q. How did it smell?

A. There was a strong odor of alcohol.

Q. Did you have occasion to observe his manner of talking?

A. No, I did not.

Q. Did you have occasion to see him walk?

A. No, when I talked to him he was in the police car.

Q. Did you form an opinion yourself, Officer, whether or not this defendant was under the influence of liquor at the time you saw him?

A. My opinion was he was unfit to drive a vehicle. In my opinion, he was under the influence of alcohol.

Q. What was your opinion adduced from?

A. From the smell of alcohol and I ordered Officer Simpson to arrest him for drunk, and driving under the influence."

On cross examination he testified as follows:

"Q. Officer Strattan, you said you did not see the man walk, did not form an opinion of his speech. You have no record of the manner in which he spoke. Lieutenant, you are basing your opinion largely on the fact he had liquor on his breath? That is what you are basing your answer on?

A. It is.

Q. Did you notice the other officer, Officer Simpson, testified Kidwell, in his opinion, was in a state of shock? Do you have same opinion?

A. I do not. I talked to him after Officer Simpson talked to him. No, I do not. He might have been shaken up. As far as being in a state of shock, I would not say he was in a state of shock."

Officer Stratton is the only witness who formed the opinion that appellant was under the influence of intoxicating liquor. This opinion was based solely on the fact that appellant's breath smelled of liquor. I do not see how that fact alone could be thought to support such an opinion. It is common knowledge that a person can drink alcoholic beverages, and thus have their odor on his breath, and not be in an "im-

paired condition of thought and action" or suffer a "loss of the normal control of his faculties to a marked degree."

Officer Simpson, the first policeman to come on the scene, testified for the appellee as follows:

"Q. Where was Mr. Kidwell when you spoke with him?

A. He was in the police car.

Q. How long did your conversation with him last?

A. Approximately ten minutes.

Q. And during the course of your conversation with him, did you have opportunity to smell his breath?

A. Yes, sir.

Q. How would you describe it's smell?

A. A strong smell of—odor of alcohol.

Q. And how did he talk?

A. He was kind of slurred. Also, he was in shock, too.

Q. It was your feeling he was in shock at that time?

A. Yes.

Q. Officer, I will ask if you have a firm opinion whether or not the defendant was under the influence of intoxicating liquor when you talked to him that evening?

A. At this time I could not say for sure."

In response to a preliminary question by the appellant's attorney, Officer Simpson further testified:

"Q. Officer Simpson, you stated you had a conversation with Mr. Kidwell in the police car, is that correct?

A. Yes, sir.

Q. And at that time you stated that to the best of your belief he was suffering from some shock, is that correct?

A. He could have. I could not say for sure.

Q. But you do think he was in shock? Did you not say you did feel he was in a state of shock?

A. Yes, sir."

Here there was no systematic effort to observe appellant's behavior in order to determine whether there was an impairment of his thought and actions, and a marked loss of control of his faculties. Officer Simpson did engage appellant in a ten minute conversation and although he said that appellant's talk was "kind of slurred" this did not lead Officer Simpson to the conclusion that appellant was under the influence of intoxicating liquor, but, on the contrary, he thought appellant was in a state of shock. Officer Simpson was as competent to offer an opinion on whether appellant was in shock as he was to offer an opinion on whether appellant was under the influence of intoxicating liquor.

I do not mean to set down a formula for determining when a person is under the influence of intoxicating liquor. It may be done in several ways and by many different types of observation. Neither do I say the smell of liquor on the breath is not a relevant factor since it would tend to show that any abnormalities in the appellant's manner and appearance were due to the alcohol and not to some physical handicap or other cause unrelated to consumption of alcohol. I would hold that a trier of fact may not find that a person is under the influence of intoxicating liquor based upon the testimony of only one police officer who in forming his opinion explicitly and solely relied on the smell of alcohol on the breath of the person involved.

There are obvious and well known observations which could have been made of the appellant's manner and appearance to determine whether he was under the influence of intoxicating liquor. This witness did not make any of them. There was no evidence that the witness observed the appellant to see whether he swayed, staggered or walked in an unusual manner. There was no evidence that the witness paid any

attention to the appellant's posture while sitting in the police car or to the condition of appellant's clothes. There was no evidence that appellant's eyes were bloodshot, watery, half-closed or unfocused. There was no evidence that the witness observed whether the appellant's verbal responses were slow, inadequate, unresponsive or incoherent.

In short, the witness made no effort to base his opinion on observations of appellant's behavior and appearance which would be relevant in determining whether appellant was in an impaired condition of thought and action and that he suffered a loss of normal control of his faculties to a marked degree.

I have surveyed many of the cases where this Court has reviewed the sufficiency of the evidence to sustain a finding that a defendant was under the influence of intoxicating liquor while driving a car and have been unable to find one that relied on as little evidence as is present in this case. For present purposes, the cases examined may be put in three categories.

(a) First, there are the cases where the Court has not set out any of the facts about the defendant's behavior which support the finding that he was under the influence of intoxicating liquor. In one case the Court merely stated that a search of the record supported the finding. *Boyle v. State* (1955), 234 Ind. 215, 125 N. E. 2d 707. In three cases the Court stated that three to four witnesses testified that in their opinion the defendant was under the influence of intoxicating liquor. *Blood v. State* (1938), 214 Ind. 578, 16 N. E. 2d 874; *Buchta v. State* (1955), 234 Ind. 295, 126 N. E. 2d 151; *Sizemore v. State* (1956), 235 Ind. 548, 134 N. E. 2d 225. In two other cases the Court stated that the witnesses based their opinions on observation of manner, appearance and conduct of the defendant. In each case there were at least two such witnesses. *Basson v. State* (1933), 205 Ind. 532, 187 N. E. 344; *Burris v. State* (1941), 218 Ind. 601, 34 N. E. 2d 928.

The cases in this category are obviously of little help in elaborating through case law the standards for determining when a person is under the influence of intoxicating liquor.

(b) The second group of cases are those where there was evidence that the defendant's blood alcohol was above .15%. Burns' Ind. Stat. Ann. § 47-2003 makes that "prima facie evidence that the defendant was under the influence of intoxicating liquor sufficiently to lessen his driving ability." In these cases then there was definitely sufficient evidence to support a finding that the defendant was under the influence of intoxicating liquor. *Anderson v. State* (1959), 239 Ind. 597, 159 N. E. 2d 287; *Prough v. State* (1957), 236 Ind. 655, 142 N. E. 2d 603; *Stevens v. State* (1959), 240 Ind. 19, 158 N. E. 2d 784; *Rogers v. State* (1949), 227 Ind. 709, 88 N. E. 2d 755 (no quantity mentioned); *Hutton v. State* (1965), 246 Ind. 589, 207 N. E. 2d 816.

(c) The rest of the cases examined show that the witnesses who had the opinion that defendant was under the influence of intoxicating liquor testified to much more than the smell of liquor on his breath. They referred to his manner of walking, talking, bloodshot and watery eyes, general appearance, etc. In every case except one there were two to four witnesses who stated their opinion that defendant was under the influence of intoxicating liquor. *Shorter v. State, supra; Hunt v. State* (1936), 216 Ind. 171, 23 N. E. 2d 681; *Bell v. State* (1954), 233 Ind. 629, 122 N. E. 2d 466; *Music v. State* (1959), 240 Ind. 54, 161 N. E. 2d 615; *Adkins v. State* (1955), 234 Ind. 81, 123 N. E. 2d 891 (only one witness in this case); *Tidrick v. State* (1955), 234 Ind. 509, 129 N. E. 2d 229; *Kaley v. State* (1955), 234 Ind. 77, 123 N. E. 2d 643; *Fiedler v. State* (1939), 215 Ind. 53, 18 N. E. 2d 384.

The question, therefore, is whether, in the absence of evidence that appellant was under the influence of intoxicating liquor, there is evidence sufficient to sustain a finding that

appellant was driving recklessly. The reckless homicide statute states:

"(a) Reckless Homicide. Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person shall be guilty of the offense of reckless homicide." Burns' § 47-2001 (a)

The meaning of this statute was discussed in *Beeman v. State* (1953), 232 Ind. 683, 115 N. E. 2d 919:

"In *Armstrong v. Binzer* (1936), 102 Ind. App. 497, 199 N.E. 863, the Appellate Court ... said:

" ' "Reckless disregard of the rights of others, as used in the Indiana Guest Statute, means where the owner or operator of an automobile voluntarily does an improper or wrongful act, or with knowledge of existing conditions, voluntarily refrains from doing a proper and prudent act, under circumstances when (where) his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that an accident may occur." ' " 232 Ind. at 690.

Proof that appellant was negligent in the operation of his car is not sufficient under this test. *Idol v. State* (1953), 233 Ind. 307, 119 N. E. 2d 428; *Beeman v. State, supra.* The proof must show that appellant consciously chose a course of action which increased the risk of harm to the victim, without intending to harm the victim.

The evidence in this case fails to meet the test set out above. The indictment alleged that appellant was driving forty-five miles per hour under circumstances where thirty-five miles per hour was a reasonable and prudent speed. The speed limit was posted at thirty-five miles per hour.

The prosecution offered no evidence of the speeds of the two vehicles except Officer Simpson's testimony concerning what appellant told him at the scene of the accident:

"A.   I asked him what happened and he said he was going south on South West and in the 1900 block, approximately forty-five to fifty miles per hour, when he observed a motorcycle stopped in the middle of his lane of traffic without lights. He then struck the cycle. He was unable to stop."

There was police testimony that there were 218 feet of skid marks prior to the point of impact. The car and the motorcycle came to rest in a field on the east side of the street 164 feet and 150 feet, respectively, from the point of impact. The victim's body was in the northbound lane 164 feet from the point of impact. The police witnesses were never asked to interpret this data in terms of the relative speeds of the vehicles and its significance is not clear to us.

There is no way anyone could infer the speed of appellant's car from this data without making assumptions about the type and conditions of the road surface, the coefficient of friction of the road surface and the tires, the condition and coefficient of friction of the brakes, the weight of the car, the weight shift during deceleration, etc. All of these factors would be relevant in determining the significance of the data and there is no evidence on any one of them.

In view of appellant's admission, I assume he was driving his car at fifty miles per hour in a thirty-five mile per hour zone as charged in the indictment.

The circumstances surrounding the collision are that appellant was driving in a thirty-five mile per hour zone at fifty miles per hour on a clear, dry night. There was no other traffic and there were open fields on both sides of the street. Appellant was in the right lane on a two lane street. After seeing the victim, appellant applied his brakes but was unable to stop before he ran into the rear end of the motorcycle killing the victim. The prosecution introduced no evidence of the speed of the victim or evidence that he was moving.

Clearly the fact that appellant was driving fifteen miles per hour over the speed limit in these circumstances is not

sufficient evidence to sustain a finding that he was driving in reckless disregard for the safety of the victim.

The cases decided by this Court on the question of sufficiency of evidence to sustain a finding of recklessness support this view.

In *Idol v. State, supra,* the defendant was driving at night over forty miles per hour on Virginia Avenue in Indianapolis on a two lane street with traffic going both ways, and cars parked on both sides of the street. He struck and killed two women who stepped out into the street in the middle of the block from between two parked cars. In reversing the conviction for reckless homicide, this Court said:

> "Negligent conduct without more will not support conviction in these cases. There is no evidence whatever that the appellant knew, or could have known, that the women would step out from between two parked cars in the darkness at a place other than an intersection, directly into the path of his automobile, or to show that he did or refrained from doing anything after he discovered their presence which would evince an abandonment of any care or a heedless indifference of the consequences. Furthermore, it could not be found or logically inferred from the evidence here that reckless misconduct on the part of the appellant proximately caused the death of the deceased."

In *Shorter v. State, supra,* the defendant, while under the influence of intoxicating liquor, was driving fifty miles per hour and ran into the rear of the victim's car which was turning off the road to the right at three to four miles per hour, with lights on and after giving a signal. Although that was a reckless driving case it is relevant to our case because the Court reversed the conviction for reckless driving on the ground that the evidence was insufficient to sustain a finding of recklessness.

In *Hardesty v. State* (1967), 249 Ind. 518, 231 N. E. 2d 510, this Court reversed as insufficient a case where the defendant straddling the centerline ran head on into another

car. Shortly prior to that he had been seen traveling sixty-five to seventy miles per hour on the two lane road.

In several cases this Court found sufficient a finding or allegation of recklessness where excessive speed was alleged but in every case either the speed was extremely high, *Wasson v. State* (1962), 243 Ind. 273, 183 N. E. 2d 604; *Etherington v. State* (1957), 237 Ind. 251, 144 N. E. 2d 717; *Patton v. State* (1962), 242 Ind. 477, 179 N. E. 2d 867, or there were other factors indicating recklessness, *Turrell v. State* (1943), 221 Ind. 662, 51 N. E. 2d 359 ("It may not be reckless to drive at high speed but so driving with knowledge that the car has defective and inadequate brakes is quite another matter".) *Roby v. State* (1938), 215 Ind. 55, 17 N. E. 2d 800; *Minardo v. State* (1932), 204 Ind. 422, 183 N. E. 548.

I would hold in this case that there was insufficient evidence that appellant was under the influence of intoxicating liquor. In the absence of that evidence there was insufficient evidence to sustain a finding that appellant was driving in reckless disregard for the safety of the victim.

Jackson, J., concurs in result.

NOTE.—Reported in 251 N. E. 2d 119.