CURTIS JOHNSON *v.* STATE OF INDIANA.

[No. 1-874A120. Filed April 29, 1975. Rehearing denied June 11, 1975. Transfer denied April 15, 1976.]

*Ted R. Todd, Hensley, Todd & Castor,* of Madison, for appellant.

*Theodore L. Sendak,* Attorney General, *Russell W. Sims,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Curtis Johnson, defendant appellant, (Johnson) was charged by indictment in three counts. The first count charged Johnson with reckless homicide in the killing of a human being by recklessly driving his automobile which reckless driving was the "approximate cause" of the decedent's death. The second count was driving a motor vehicle while under the influence of intoxicating liquor and causing the death of another person. The third count was the charge of driving a motor vehicle while under the influence of intoxicating liquor, second offense.

The trial of the cause resulted in the jury finding Johnson guilty of reckless homicide under Count I and driving under the influence of intoxicating liquor, second offense, under Count III and the second count resulted in a finding of not guilty. Sentence was passed by the court in compliance with Count I and Count III of the indictment. In Count III the court recommended Johnson's drivers license be suspended for two years in addition to the assessment of penalty by the jury.

We reverse as to Count I and affirm as to Count III.

## FACTS OF THE CASE

The facts most favorable to the State disclose that Johnson was present in a tavern at Austin, Indiana, on the evening of June 6th and the morning of June 7th, 1973. Johnson consumed beer that evening and when he left the tavern he walked in an unsteady manner, was then in an intoxicated condition and entered an automobile in the company of another person and was observed by witnesses before and at the time he drove his motor vehicle out of the parking lot onto U.S. Highway 31. It was necessary for Johnson to cross the left lane of the highway in order to proceed north on his right side of the road. One witness testified that Johnson pulled out very slowly from the parking lot and seemed to have some trouble straightening out and leaving the left hand lane of the highway. This witness ceased to observe Johnson's automobile but a short time later she heard a crash and requested others to go to the scene, where Johnson had been involved in a fatal collision.

Police were summoned to the scene and they observed two cans of beer and a bottle of liquor in Johnson's car. A strong odor of alcohol was detected on Johnson's breath as he answered the questions of the police. There was photographic and parol evidence that both automobiles were in the left, or southbound, lane of U.S. 31. Johnson agreed to and was given a breathalyzer test approximately 3½ hours after the collision and at that time his blood alcohol was .11%.

There was no eye witnesses to the collision except Johnson, who did not testify, the decedent, and Johnson's passenger. The passenger could not recall anything prior to the collision.

Johnson sets forth seven specifications of claimed error in his motion to correct errors. We shall discuss only those claimed errors necessary as a result of the conviction on Count III and any which may have effect on a new trial of Count I.

## SPECIFICATIONS OF ERROR

Specification 1 is that the court erred in overruling defendant's motion to quash where the counts failed to mention whether the offenses charged were a misdemeanor or a felony.

Johnson urges the failure to distinguish between a felony and a misdemeanor handicaps the defendant in several ways. He further urges he had a constitutional right to demand the nature of the accusation against him.

This argument is merely a contention that inasmuch as Johnson did not know whether he would be fined or sent to prison or the State Farm he could not intelligently consider a guilty plea. A reading of the statute alone would advise his counsel of the penalty and they would readily determine whether the offense was a felony or a misdemeanor.

Our Supreme Court, in *In re Sobieski* (1965), 246 Ind. 222, 204 N.E.2d 353, stated that the dual aspect of the statute which provided for separate penalties for subsequent offenses was not unconstitutional.

Johnson was not prejudiced by the failure of the indictment to say whether it was charging a misdemeanor or a felony. It appears Johnson was desirous of the State pleading facts to which he could plea bargain. Such is not the purpose of the indictment.

While it is not necessary to this opinion, we shall, under specification 2, consider appellant's argument in his motion to quash that the affidavit charging him with reckless homicide was improper because the word "approximate" was used rather than the word "proximate."

We feel that the use of the word "approximate" can only lead to difficulty both for the jury and the court when the question of causation is to be considered. It would eliminate any question if the word "proximate" was used in the indictment rather than the word "approximate" and it also would enable the trial court to give instructions on the meaning of the word "proximate" before the issue of causation is presented to the trier of fact.

In the absence of either word, however, the affidavit should show a clear causal connection between the alleged reckless acts and the death. *Turrell* v. *State* (1943), 221 Ind. 662, 51 N.E.2d 359; *State* v. *Beckman* (1941), 219 Ind. 176, 37 N.E.2d 531.

Specification 3 is that the court erred in refusing to give Johnson's tendered instruction on circumstantial evidence. The instruction tendered was directed solely to the proposition that there were no eye witnesses to the accident and that the State's proof rests solely on circumstantial evidence.

It is not necessary to prove under Count III that Johnson was under the influence of intoxicating liquor at the time of the fatal collision. The burden was on the State to prove that he drove a motor vehicle upon the public street or highway while under the influence of intoxicating liquor. One eye witness testified he saw Johnson walk in the parking lot just before he drove his car and said "Mr. Johnson walked in the parking lot as if he were drunk."

Mrs. Winchester, a waitress at the tavern, observed Johnson leave the tavern parking lot, driving his automobile and pull out onto U.S. 31. Johnson did not straighten out entirely on U.S. 31 and this witness ceased to observe him. He appeared to be having difficulty straightening his vehicle on the highway.

The court correctly refused said instruction as the evidence was not all circumstantial as to Count III. He was seen driving on U.S. 31 before he was involved in the fatal crash.

Specification 4 is that the court erred in admitting over Johnson's objection the results of a breathalyzer test performed on Johnson's breath. Police officers talked to Johnson at the scene as he lay outside his car and his breath smelled strongly of liquor. Officer Shelley went from the scene to the hospital where Johnson freely consented to the breathalyzer test. Johnson was given emergency treatment and then assigned to a bed and was under police surveillance from then until the test was given, about 3½ hours later.

We find untenable Johnson's argument that the breathalyzer test results should not have been admitted because of lack of observation of Johnson between the time of the accident and the time of the test and further that the interim 3½ hours makes the test results too speculative to be relevant to the case.

Johnson was cognizant of the fact that he had agreed to submit to the breathalyzer test. He was under technical arrest, as a traffic ticket had been issued to him at the hospital. He was in bed and officers periodically checked on him. It is most unlikely he had anything to drink after the wreck under the above related circumstances and, further, a man of normal intelligence would not take a drink of liquor when he knew that at any time his breath would be analyzed for intoxicants. Further, a trained pathologist testified that a person showing an .11% level would probably have shown a .15-.16% level 3½ hours earlier.

There was further evidence of eye witnesses from which the jury could determine that Johnson was under the influence of intoxicating liquor when he drove on the public highway that night. The evidence of the breathalyzer test was merely cumulative and therefore, any error, if it were error, in admitting the results of the breathalyzer test would not have been harmless. *Klebs* v. *State* (1974), 159 Ind. App. 180, 305 N.E.2d 781.

Specification 5 is that the court erred in refusing to grant Johnson relief resulting from failure of the Grand Jury to take minutes. IC 1971, 35-1-15-10, Ind. Ann. Stat. § 9-810 (Burns 1974 Supp.) provides that the Grand Jury must select a clerk from one of its members, which clerk shall take minutes of the proceedings. This was not done in the case at bar. Although it is by statute that this be done, in the case of *Jaudon* v. *State* (1970), 255 Ind. 114, 262 N.E.2d 851, where notes were not taken by the Grand Jury, our Supreme Court said:

> ". . . it is not enough that error be shown in the record, but is must be error which was prejudicial to the defendant. . . ."

There is nothing in the record before us that would indicate anything other than that the witnesses who testified in the trial were available to or may have testified before the Grand Jury. In any event their evidence was available at trial and these witnesses testified. We cannot find from the record where any prejudice to Johnson was shown.

Further, if Johnson desired the evidence of any witness or witnesses given before a Grand Jury when the State claims evidence was not taken down and transcribed it is incumbent upon him to first lay the proper foundation for his motion or the trial court may deny it. Johnson having failed to lay the foundation the court properly refused to strike from the record the evidence of Officer Williams who testified before the Grand Jury and who gave the breathalyzer test. *Sargent* v. *State* (1972), 153 Ind. App. 430, 287 N.E.2d 795.[1]

Specification 6 is that the court erred in refusing to grant defendant's motion for directed verdict at the close of plaintiff's evidence.

In *State* v. *Overmyer* (1973), 155 Ind. App. 689, 294 N.E.2d 172, this court said, quoting from *Bash* v. *State* (1970), 254 Ind. 671, 262 N.E.2d 386:

> " 'A directed verdict is only proper where there is a total absence of evidence on some essential issue required to convict, or where the evidence is without conflict and susceptible to only one inference in favor of the accused. . . .'

> In *Holliday* v. *State* (1970), 254 Ind. 85, 257 N.E.2d 679, in passing on the requirements of a directed verdict, the court said:

> 'To avoid a directed verdict the State merely has to make out a prima facie case.' " 294 N.E.2d at 173.

---

1. In *Sargent* v. *State, supra,* Judge White of this court has established the requirements of the foundation for the evidence needed from a Grand Jury and the proper steps to follow for a defendant to save his record where the Grand Jury evidence had not been reported and transcribed.

We are of the opinion the State's evidence in chief made a prima facie case and the court correctly overruled the motion for directed verdict.

The seventh and last issue was whether the verdict of the jury was supported by sufficient evidence.

## DECISION

It is well established that on appeal this court will consider only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which the jury could have inferred guilt beyond a reasonable doubt the conviction must be upheld. This standard is also applicable to cases involving circumstantial evidence. *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686; *Rogers* v. *State* (1974), 262 Ind. 315, 315 N.E.2d 707.

To sustain a conviction for reckless homicide it is necessary to show conduct that:

". . . involves a conscious choice of a course of action which injures another, either with knowledge of the serious danger to others involved therein, or with knowledge of facts which would disclose the danger to any reasonable man. . . ." *Beeman* v. *State* (1953), 232 Ind. 683, 691, 115 N.E.2d 919.

It is not sufficient that mere negligence or inadvertence is shown. *Shorter* v. *State* (1954), 243 Ind. 1, 122 N.E.2d 847; *Kidwell* v. *State* (1969), 252 Ind. 585, 251 N.E.2d 119; *Seibert* v. *State* (1959), 239 Ind. 283, 156 N.E.2d 878.

We feel there is sufficient evidence to sustain Johnson's conviction for driving under the influence of intoxicating liquor. It is true that driving while intoxicated in conjunction with other evidence of driving in a dangerous manner may be sufficient to sustain a conviction for reckless homicide. *Broderick* v. *State* (1967), 249 Ind. 476, 231 N.E.2d 526.

The question presented, therefore, is whether the evidence as to Johnson's driving, or his drinking and driving, was suf-

ficient to be reckless conduct as would fall within the statute. This question was considered in *DeVaney* v. *State* (1972), 259 Ind. 483, 288 N.E.2d 732, and was resolved as follows:

"Can the mere fact that it was shown that appellant crossed the center line while driving be considered driving 'with reckless disregard for the safety of others'? We think not. Such an occurrence could be completely accidental. . . .

Can the mere fact that defendant was driving in close proximity to the time he had been drinking be sufficient to find 'reckless disregard for the safety of others'? We think not. Although the evidence of intoxication could certainly be considered by the jury, . . . that alone is not sufficient to convict for reckless homicide. . . .

Are the facts that appellant crossed the center line and that he was intoxicated, together, sufficient to constitute reckless homicide? Although a closer question, again we think not. . . . If that alone were sufficient to constitute reckless homicide then the parallel crime of causing the death of another while driving under the influence of intoxicating liquors *contained in the same statute* would be superfluous and unnecessary. It seems clear that the legislature intended to provide for two distinct crimes and that reckless homicide required something more than causing the death of another while driving under the influence. Since the proof in the case at bar showed no more than that appellant caused the accident while driving under the influence of intoxicating liquor, the conviction for reckless homicide must be reversed." (Original emphasis.) 288 N.E. 2d at 738, 739. See also, *Cichos* v. *State* (1962), 243 Ind. 187, 184 N.E.2d 1.

We are of the opinion that the evidence in the case at bar is insufficient to establish actions amounting to a reckless disregard for the safety of others or a conscious choice of action which resulted in the death of another. While there was evidence that Johnson was at one time in the left lane, there is no evidence that Johnson remained in that lane, rather than merely crossing over the center line prior to the accident. There is no evidence that would establish the exact time lapse between the time the witness ceased to observe Johnson's automobile and the time the crash was heard at the tavern. While such evidence may support an inference of negligent operation of a motor vehicle, that will not meet

the legal requirements of proof necessary to sustain a conviction of reckless homicide.

Johnson's conviction for driving while under the influence of intoxicating liquor, second offense, Count III of the indictment, is affirmed.

Johnson's conviction for reckless homicide under Count I of the indictment, for the foregoing reasons, is hereby reversed and remanded to the trial court for a new trial.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 326 N.E.2d 637.