Ivery Lee WILLIAMS,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1-880A220.

Court of Appeals of Indiana,
First District.

Jan. 27, 1981.

Rehearing Denied March 18, 1981.

Douglas W. Meyer, Elmendorf & Meyer, Plainfield, for defendant-appellant.

Linley E. Pearson, Theodore L. Sendak, Attys. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

This is an appeal from the Hendricks Superior Court No. 2 by defendant-appellant Ivery Lee Williams (Williams) from a conviction by the court of criminal recklessness, Ind.Code 35-42-2-2(b) (Supp.1979), and leaving the scene of an accident, Ind. Code 9-4-1-40(b) (Supp.1979).

We affirm.

## STATEMENT OF THE FACTS

On August 25, 1979, at approximately 12:30 p. m., Phillip J. Ertel, an adult, was riding a bicycle west on Indiana Highway 36. He was traveling along the right-hand side and near the outer edge of the road. The weather was clear and visibility, at the scene of the accident, was good. At a point about one and one-half miles west of New Winchster in Hendricks County, Ertel was struck from behind by a vehicle. He was stunned and seriously injured; he could not remember the impact; he did not see the vehicle or its driver, as it did not stop. Ertel was found by motorists in a badly bruised condition on the right-hand side of the road. His left arm and the left side of his torso were injured; a gash in his left leg required twenty-three stitches. He was hospitalized and missed a week of work. A wing mirror (side-mounted, rear-view) and parts of its hanger were found in the road at the scene of Ertel's injury.

Later that afternoon, Jerry Clinger, Town Marshall of Bainbridge, Putnam County, Indiana, discovered Williams about thirteen or fourteen miles west of the scene of the accident on Highway 36, passed out or asleep in a 1963 Chevrolet pickup truck. The truck was registered to Williams. After arousing Williams, the officers advised him of his *Miranda* rights. Upon questioning Williams informed them that he had been driving the truck since 7:00 a. m. and that he had driven down Highway 36 moving furniture from Tipton through Indianapolis. A chemical analysis for blood alcohol content registered .37 percent; the officers further testified as to his inebriated condition and his inability to walk unaided. Officers identified the mirror found in the road as belonging to Williams's truck.

## ISSUES

The issues presented for consideration are as follows:

I. Whether the trial court erred in admitting Williams's incriminating statements that he was driving the vehicle; whether Williams was knowingly advised of his constitutional rights; and whether Williams knowingly waived such constitutional rights against self-incrimination;

II. Whether the evidence was sufficient to support a finding of guilt on each charge.

## DISCUSSION AND DECISION

*Issue I. Admission of incriminating statements*

■ At trial Williams objected to the admission of his statements that he was driving the truck on the basis that he was in such a drunken condition that it was impossible for him to have knowingly waived his *Miranda* rights. The Supreme Court of Indiana set forth the standard for determining admissibility of confessions in *Harrison v. State*, (1978) Ind., 382 N.E.2d 920, 923–924, as follows:

"The question of the admissibility of a confession is controlled by determining, from the totality of circumstances, whether or not it was made voluntarily. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement, and whether the accused's will was overborne.... We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial probative evidence to support the trial court's finding.... We will not disturb a trial court's ruling on the admissibility of a confession when such ruling is based on substantial though conflicting evidence...." (Citations omitted.)

The same test determines whether a valid waiver of *Miranda* rights has occurred. *Chambers v. State*, (1979) Ind., 392 N.E.2d 1156.

At trial the court conducted a hearing on the admissibility of the statements. Officer Clinger's testimony was the only evidence introduced on this matter. He stated that Williams was either asleep or passed out in the truck. It took Clinger about two minutes to bring Williams to consciousness by

shaking him. Williams was unable to walk unaided. Three or four minutes elapsed before questions were posed to him. In response to the trial court's question, "Did the defendant understand what you were saying to him?", Officer Clinger stated, "I believe he did."

■ Applying our standard of review we cannot say that the trial court erred in admitting the incriminating statements.

*Issue II. Sufficiency of the evidence*

Williams asserts that the sole link between himself and the accident is the mirror found in the road at the scene. He argues that insomuch as there were no traces of blood, hair, cloth, or paint on the mirror further connecting it to the accident or the injuries, the evidence is insufficient to sustain either of the convictions.

The evidence connecting Williams's truck to the accident is circumstantial in nature. Our standard of review in determining the adequacy of such evidence to sustain a conviction was set forth in *Glover v. State*, (1973) 157 Ind.App. 532, 300 N.E.2d 902.

"This Court will not weigh the evidence nor determine questions concerning the credibility of witnesses when reviewing the evidence. We will look only to that evidence most favorable to the State and the reasonable inferences therefrom. A conviction will be affirmed when there is substantial evidence of probative value from which the trier of fact could reasonably infer that Mary K. Glover was guilty beyond a reasonable doubt. *Walker v. State* (1973), 155 Ind.App. 404, 293 N.E.2d 35.

It is well established that a conviction may be supported by circumstantial evidence. *Walker v. State, supra; Miller v. State* (1972), 153 Ind.App. 54, 285 N.E.2d 843; *Vaughn v. State* (1971), 255 Ind. 678, 266 N.E.2d 219. The specific test for the examination of circumstantial evidence has been recently restated by our Supreme Court in *McAfee v. State* (1973), 259 Ind. 687, 291 N.E.2d 554, 556:

'Where the sufficiency of circumstantial evidence is in question, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. *Stice v. State* (1950), 228 Ind. 144, 89 N.E.2d 915; *Petillo v. State* (1950), 228 Ind. 97, 82 N.E.2d 623.' See also *Finger v. State* (1973), 260 Ind. 148, 293 N.E.2d 25; *Walker v. State, supra; Haynes v. State* (1973), 155 Ind.App. 472, 293 N.E.2d 204.

Therefore, the task before this Court is to determine whether the circumstantial evidence and reasonable inferences drawn therefrom are insufficient as a matter of law."

157 Ind.App. at 536, 300 N.E.2d 902. Williams correctly cites *Dunn v. State*, (1973) 260 Ind. 142, 293 N.E.2d 32, for the proposition that mere suspicion or opportunity is insufficient to sustain a conviction. However, physical evidence, such as damage to the automobile, glass at the scene, missing door handle found at the scene, together with other evidence, have been held sufficient to connect a vehicle to a collision. *Dalton v. State*, (1952) 230 Ind. 626, 105 N.E.2d 509; *Runyon v. State*, (1941) 219 Ind. 352, 38 N.E.2d 235.

■ The evidence discloses that Williams, in a highly intoxicated condition, .37 percent chemical analysis, drove past the scene of the accident on Highway 36 on the day in question and within the time frame of the accident. The right wing mirror and supports off of his truck were found at the scene. Ertel was not struck by something so heavy as to crush his body, such as an automobile, but by something substantial yet possessing an elastic or break-away quality, such as a wing mirror held onto the body of a truck with small bolts. This evidence, although circumstantial, supports the justifiable inference of Williams's guilt. While substantial evidence means more than "seemingly or imaginary," *Finch v. State*, (1967) 249 Ind. 122, 231 N.E.2d 45, a decision upon which reasonable men might

differ will not be set aside. *McAfee v. State*, (1973) 259 Ind. 687, 291 N.E.2d 554. The record is devoid of any facts that would justify an inference other than that the mirror got into the road by virtue of having struck something, namely Ertel, and thereby having been knocked off. We are of the opinion that the circumstantial evidence presented here reasonably warrants an inference of the guilt of Williams.

Williams's second sufficiency of the evidence argument is directed to the criminal recklessness conviction under Ind.Code 35–42–2–2(b) (Supp.1979). That section defines the offense as follows:

"A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person commits criminal recklessness, a Class D felony."

Ind.Code 35–41–2–2(c) (Supp.1979) defines "recklessly" as follows:

"A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

Williams contends that even if he did strike Ertel with his truck while in a state of intoxication, there would not be sufficient evidence to prove he recklessly inflicted bodily injury on another person. In support of this argument he cites *DeVaney v. State*, (1972) 259 Ind. 483, 288 N.E.2d 732, *Hardesty v. State*, (1967) 249 Ind. 518, 231 N.E.2d 510, and *Johnson v. State*, (1975) 164 Ind.App. 12, 326 N.E.2d 637, for the proposition that the mere happening of an accident, or the mere act of being across the center line while intoxicated, is not in and of itself sufficient to support the conviction of criminal recklessness. We first note that these cases were decided prior to the enactment of the 1977 Criminal Code. They do, in reference to prior law, bear out, in measure, Williams's contention.

In *DeVaney, supra*, the evidence indicated the defendant was driving on the wrong side of the road and had a chemical analysis reading of .26 percent. He was charged with and convicted on two counts:

reckless homicide and causing the death of another while driving under the influence of intoxicating liquor. The statute then in force was IC (1971) 9–4–1–54 (Burns Code Ed.) which read, in part, as follows:

"(a) Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person shall be guilty of the offense of reckless homicide. . . .

(b) . . .

(1) Any person who while under the influence of intoxicating liquor or unlawfully under the influence of narcotic or other habit-forming or dangerous, depressant or stimulant drugs drives a vehicle and when so driving causes the death of another person, is guilty of a felony. . . ."

Our Supreme Court affirmed the conviction of causing the death of another while driving under the influence of intoxicating liquor, but reversed conviction of reckless homicide. Justice Hunter stated for the court:

"Are the facts that appellant crossed the center line and that he was intoxicated, together, sufficient to constitute reckless homicide? Although, a closer question, again we think not. . . . If that alone were sufficient to constitute reckless homicide then the parallel crime of causing the death of another while driving under the influence of intoxicating liquors *contained in the same statute* would be superfluous and unnecessary. It seems clear that the legislature intended to provide for two distinct crimes and that reckless homicide required something more than causing the death of another while driving under the influence."

259 Ind. at 493–494, 288 N.E.2d 732. *Johnson, supra*, followed *DeVaney*.

In *Broderick v. State*, (1968) 249 Ind. 476, 231 N.E.2d 526, our Supreme Court affirmed a conviction of reckless homicide and involuntary manslaughter where the defendant was driving, while intoxicated, in a dangerous manner, leaving the road and crossing the median several times. The

court said "Certainly a reasonable man should realize that physical injury may result and is clearly within the test of *Beeman v. State, supra* [(1954) 232 Ind. 683, 115 N.E.2d 919]." 249 Ind. at 480–481, 231 N.E.2d 526. Practically, in *Broderick*, the basic causative element was the intoxication, that is, defendant could not, because of his intoxication, control his vehicle. Thus the court said, "We conclude that being intoxicated was part of the transaction of reckless driving." 249 Ind. at 483, 231 N.E.2d 526.

We are of the opinion that the holdings and language in *Broderick, supra, DeVaney, supra,* and *Johnson, supra,* in reference to the context of the statutes as then existed, all considered the act of deliberately driving a motor vehicle while under the influence of intoxicants to contain an element of recklessness.

The 1977 Criminal Code completely reorganized and redefined many if not most offenses. Examination of the Code discloses that Ind.Code 35–42–2–2 (Supp.1979) replaced many of the non-fatal, physical and violent offenses against the person such as mayhem, injuries by poison, and drawing or aiming weapons. It further created a new and distinct offense, recklessness causing injury, which did not theretofore exist, and does not exist now except in this section. The 1977 Criminal Code also incorporated reckless homicide into Ind.Code 35–42–1–5 (Supp.1979) as a separate section. Driving under the influence causing death was relocated in Ind.Code 9–4–1–54(b)(1) (Supp. 1979).

In *DeVaney, supra,* the court was concerned with statutory construction. *Johnson, supra,* followed *DeVaney.* However, as of the 1977 enactments, we are no longer dealing with twin or parallel crimes in the same section. According to the framers of the 1977 Criminal Code, Ind.Code 35–42–2–2 (Supp.1979) encompasses every reckless conduct which causes bodily injury or creates a substantial risk of bodily injury, including conduct related to the operation of motor vehicles. This is a new offense, and we are of the opinion that the reasoning set forth in *DeVaney* and *Johnson* is no longer applicable.

The Indiana Criminal Law Study Commission Comments to West's AIC 35–41–2–2(c) reflect that the definition of recklessness in this section was not intended to alter or replace the definition set forth in *Beeman v. State* (1954) 232 Ind. 683, 115 N.E.2d 919:

> "[A] reckless disregard for the safety of others involves a conscious choice of a course of action which injures another, either with knowledge of the serious danger to others involved therein, or with knowledge of facts which would disclose the danger to any reasonable man. . . .
>
> \*  \*  \*  \*  \*  \*
>
> In other words, to be guilty of a reckless disregard for the safety of others . . . [i]t is sufficient that the actor realizes, or should realize, that there is a strong probability that such harm may result [from his voluntary action or omission]."

232 Ind. at 690–692, 115 N.E.2d 919.

The Criminal Law Study Commission Comments to Ind.Code 35–42–2–2 (Supp. 1979), printed in West's AIC 35–42–2–2 at page 373, are as follows:

> "Source and Purpose. Reckless conduct is new to Indiana law. The inspiration of this section comes from the reckless endangerment sections of the Federal Criminal Code § 1613 (Study Draft 1970) and the Model Penal Code § 211.2 (Proposed Official Draft 1962). It is analogous in its provisions to involuntary manslaughter except that no homicide is required hereunder. Any conduct which is so recklessly performed that it creates a substantial risk of bodily injury is prohibited. Under the first aspect of this crime, it is not necessary that any injury be caused or that someone actually be in danger before the section is violated since it is the inherently dangerous situation which is proscribed. However, if serious bodily injury occurs through the offender's acts, a heavier penalty is imposed. Furthermore, there is a separate penalty if the reckless conduct is committed through the use of a deadly weapon *or a vehicle.*

Examples of conduct prohibited hereunder include pointing loaded firearms at others, reckless driving and abandoning refrigerators where children may play.

Existing Law. *The crime defined by this section is new by this name and aims to encompass every reckless conduct which creates a substantial risk of bodily injury; or recklessly causes bodily injury or serious bodily injury to another.*

The mind can conceive of many situations where 'reckless conduct' could be charged, but of the present statutes this section was primarily designed to replace those already discussed in 'Existing Law' under 'battery,' 35–12.1–2–1, *and all the offenses committed by the reckless handling of motor vehicles except reckless homicide* ; see specifically IC [1971] 9–4–1–54(b) and (c) which deals with driving while under the influence of intoxicating liquor or narcotic drugs, and reckless driving." (Emphasis added.)

■ In the case at bar, the evidence discloses that Williams drove a motor vehicle on a public highway while in a state of extreme intoxication and, in broad daylight, struck a bicyclist who was traveling along the far right-hand side of the road. A bicycle is a vehicle, Ind.Code 9–4–1–2(f) (Supp.1979), and must be regarded and operated as a vehicle, Ind.Code 9–4–1–94. Williams was obligated to pass the bicyclist on the left at a safe distance. Ind.Code 9–4–1–66(a). The reckless act consisted of driving on a public highway in a state of extreme intoxication and striking a bicyclist who was riding in a place where he had every right to be. Williams should have realized that there was a strong probability that other persons, including the bicyclist, would be using the road, and that he was so heavily intoxicated that he could not see clearly, judge or react, or drive safely so as to prevent injuries to other persons lawfully using the highway. Such conduct, as stated in Ind.Code 35–41–2–2(c) (Supp.1979) "involves a substantial deviation from acceptable standards of conduct." The result of his actions was wholly predictable. Given his condition, it was only a question of which motorist, pedestrian, or bicyclist on Highway 36 would be his victim.

For the reasons stated above, the convictions are affirmed.

Affirmed.

RATLIFF, J., concurs.

YOUNG, P. J. (participating by designation), dissents with opinion.

YOUNG, Presiding Judge, dissenting.

I dissent and would reverse the judgment of the trial court because there is insufficient evidence to support either defendant's conviction of criminal recklessness or leaving the scene of an accident.

First, there is insufficient evidence that defendant recklessly operated his vehicle. The majority, in its construction of the recklessness requirement of IC 35–42–2–2(b) holds that intoxication is sufficient, in and of itself, to prove recklessness. Our courts have long held, however, that proof of recklessness, a conscious disregard for the safety of others, requires evidence of driving in a dangerous manner *in addition* to evidence of driving while intoxicated. *DeVaney v. State*, (1972) 259 Ind. 483, 288 N.E.2d 732; *Broderick v. State*, (1967) 249 Ind. 476, 231 N.E.2d 526; *Johnson v. State*, (1975) 164 Ind.App. 12, 326 N.E.2d 637. The majority correctly states that intoxication is a factor—part of the transaction of reckless driving. The act of dangerously operating the vehicle, however, not drinking intoxicants, is the basic causative element of the crime. The absence of evidence that defendant drove dangerously is the crucial difference between this case and *DeVaney, Broderick*, etc. In *Broderick*, where the reckless homicide conviction was affirmed, there was evidence, aside from the happening of an accident and the drinking of intoxicants, that the defendant could not in fact safely control his vehicle—he repeatedly swerved across the center line. In *DeVaney* and *Johnson*, where such evidence was absent, the reckless homicide convictions were reversed for insufficient evidence of recklessness. Here, there is no evidence that defendant was driving in a

dangerous or erratic manner. Thus, the conviction cannot stand.

The majority, to avoid the clear directive of *DeVaney* and its progeny, seizes upon a distinction without substance. When our Supreme Court wrote *DeVaney*, the offenses of reckless homicide with a motor vehicle, codified as IC 9–4–1–54(a), and causing the death of another while driving under the influence of intoxicating liquors, codified as IC 9–4–1–54(b)(1), were contained in the same statute. In enacting the 1977 Criminal Code, the legislature separated the two offenses, recodifying reckless homicide with a motor vehicle under IC 35–42–1–5. For some reason, the majority concludes that because the two offenses are no longer found in the same statute, the legislature intended to alter or lessen the acts necessary to prove the elements of recklessness. I believe a strong tenet of statutory construction is that statutes relating to the same subject matter are to be construed together so as to harmonize and give effect to each, because they are *in pari materia. State ex rel. Schuerman v. Ripley County Council*, (1979) Ind.App., 395 N.E.2d 867. In re-enacting reckless homicide, it is presumed that the legislature, even though removing it from IC 9–4–1–54, intended the statute to be given the same construction as previously given. *State ex rel. Moore v. Smock*, (1973) 156 Ind.App. 158, 295 N.E.2d 857. A criminal statute, construed strictly against the state, will not be enlarged by implication or intendment beyond the fair meaning of the language used and will not be held to include offenses or persons other than those clearly described and provided for. *Hutcherson v. State*, (1978) Ind.App., 382 N.E.2d 983. It thus remains clear to me that the legislature "intended to provide for two distinct crimes and that reckless homicide require[s] something more than causing the death of another while driving

under the influence." *DeVaney v. State*, (1972) 259 Ind. at 493–494, 288 N.E.2d 732.

The legislature in 1977 created the new offense of criminal recklessness, IC 35–42–2–2. Criminal recklessness, requiring proof that defendant (1) *recklessly*, knowingly or intentionally (2) inflicted serious bodily injury (3) upon another person, satisfies the definition of an included offense of reckless homicide, IC 35–41–1–2.[1] The same culpability, "recklessly" is required, the offense of recklessness differs only from reckless homicide in that a less serious harm need be proved. Because the same culpability, recklessness is required for either offense, *DeVaney* and the other cases defining the acts necessary to show recklessness serve as perfect guideposts for review of a conviction for recklessness. Those cases unerringly demonstrate that to sustain a conviction for recklessness, evidence must be present that defendant was driving in a dangerous manner prior to the accident. The majority would hold that a .37 blood alcohol level is sufficient proof of recklessness. Given the imprecision of blood alcohol tests and the variations among individual capacity levels, I hesitate to rest a finding of recklessness on a blood alcohol test alone. The majority's construction of IC 35–42–2–2 is one which I cannot accept.

I also find insufficient evidence that defendant was the operator of the vehicle involved in the accident. The defendant Williams was discovered sitting in his pickup truck alongside State Highway 36 in Putnam County thirteen or fourteen miles west of the scene of an accident which occurred in Hendricks County. The only evidence in the record which would indicate that Williams operated his truck in Hendricks County is the following examination of Jerry Clinger, Town Marshall of Bainbridge:

1. IC 35–41–1–2(2) defines included offense: "Included offense" means an offense that: (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
(3) differs from the offense charged only in respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Q: Did he make statements to you?

A: Yes.

Q: What did he say?

A: I asked him if that was his pickup truck and he stated to me that yes, it was. I also asked him where he had been that day. He told me he had been ... He had been moving furniture or something from Tipton. That's all he said.

Q: Did he admit that he had been driving the truck?

A: Yes.

Q: Did he indicate that he had been in Indianapolis?

A: Yes, he did.

Q: Did he indicate that he had driven from Indianapolis to the location where you found him?

A: *He admitted driving, however, he didn't know where he was at.*

U. S. Highway 36 extends from the City of Indianapolis in a general east-west direction through Hendricks and Putnam Counties. Had the witness responded affirmatively to the last question posed to him, the evidence would have been sufficient to place Williams at the scene of the accident in Hendricks County operating his truck. He did not. There simply is no evidence that Williams was the operator of the truck at the time of the accident and none from which the trier of fact could reasonably infer that he was the operator. He was found drunk in the truck two and one-half hours after the accident thirteen or fourteen miles away.

I disagree with the majority's statement that Williams "drove past the scene of the accident on Highway 36 on the day in question and within the time frame of the accident." The record fails to substantiate that statement. There is no evidence putting Williams at the scene. In fact, there is no evidence in the record that he was there "within the time frame of the accident", again, the only evidence is that he was found in his truck thirteen or fourteen miles away two and one-half hours after the accident. Because I find insufficient evidence that defendant was the operator of the vehicle, I would reverse both the recklessness conviction and the conviction for leaving the scene of the accident.

I would also disagree with the majority where they find that Williams was adequately advised of his rights in a manner in which those rights could be understood and that Williams knowingly and intelligently waived those rights. Only Clinger testified on this matter not "both officers" as indicated by the majority. (119, 415 N.E.2d 118) Webber, who arrived at the Williams truck after Clinger, found Williams was in Clinger's patrol car. Clinger responded to a dispatch regarding a pickup truck west of Morton with a person passed out inside. Upon his arrival, he observed a white over red Chevy pickup truck parked and facing east on 36, three quarters of a mile from Morton in Putnam County. He identified Williams as the same person in the truck. Clinger states that Williams was passed out. Clinger opened the truck door and tried to wake him up. "I finally got him awake and asked him to step out of the truck. I had to help him out. At that point I took him back and placed him in the back seat of my patrol car."

Q: Did you advise him of his rights?

A: Yes sir, I did.

Q: Did he make any statements to you?

It is antinomical that the majority characterizes Williams condition as "highly intoxicated", "extreme intoxication", and so "heavily intoxicated that he could not see clearly, judge or react, or drive safely" and finds him reckless as a matter of law but, at the same time, allows the trial court to find Williams understood his constitutional rights and knowingly and intelligently waived those rights. Clinger took about two minutes to bring Williams to consciousness by shaking him. Williams was unable to walk without help. Three or four minutes elapsed before questions were posed to him. From this evidence, I cannot accept the majority's finding that Williams understood and knowingly waived his rights.