RAY *v*. STATE OF INDIANA.

[No. 29,125. Filed June 15, 1954. Rehearing denied September 30, 1954.]

*Rochford & Rochford,* and *Alembert W. Brayton,* of Indianapolis, for appellants.

*Edwin K. Steers,* Attorney General, and *Richard M. Givan,* Deputy Attorney General, for appellee.

DRAPER, J.—An indictment in two counts was returned against the appellant. He was found guilty of involuntary manslaughter as charged in count one thereof. His motion for new trial was overruled, and he appeals.

About ten o'clock on the night of September 21, 1951, the appellant went to the home of a girl friend in Indianapolis. He had been drinking and brought with him twelve cans of beer, six of which he drank before he left about 12:30 A.M. When he left he was drunk. He was loud, giddy, boastful, boisterous and unsteady on

his feet. In backing out to leave he raced the motor of his automobile and struck the curb and a parked car.

Between 12:30 A.M. and 12:45 A.M. he was driving north on Madison Avenue near where it merges with Brill Road and intersects Southern Avenue within the city limits of Indianapolis. At that point, which is in a thirty mile zone, he drove seventy to eighty miles per hour through an overhead caution light without pause. His motor was "screaming" and "sounded like it was wide open." He was driving on the wrong side of the road, that is, the west side, the portion reserved for southbound traffic.

At that moment Morris Eugene Miller was driving his automobile from the north going south on Madison Avenue. He was accompanied by his nine-months-old daughter and by his wife, with whom he was conversing at the time, and he was driving twenty to twenty-five miles per hour about a foot or two from the west curb line. The ensuing collision demolished the whole left front and side of Miller's car, which went about fifty feet and jammed itself into a hill. The appellant's car stopped about one hundred feet past the point of impact.

Immediately after the collision the appellant's breath smelled strongly of alcohol. He was not seriously injured. "The other fellow (Miller) he was slumped over the seat and the whole side of his head and everything was all bashed in . . . blood was squirting out all over." "He was lying in the seat with his head back over to the right side of the car, to the back, in a kind of twisted position." "He had blood coming from his head and also from his right shoulder, bleeding badly, severe hemorrhages. I believe the blood was coming from his ears. He was so bloody I could not tell." "His head was on the back part of the car in a pool of blood." Miller was twenty-seven years of age. He was immedi-

ately removed to the hospital and died in the receiving ward three minutes after arriving there. A doctor who saw him at the hospital was not available as a witness, although the record discloses the state's unsuccessful efforts to secure his presence.

We have briefly described Mr. Miller's injuries because of appellant's insistence that there is no evidence in the record to show that he died as the result of any injury inflicted by the appellant. The appellant contends that the evidence is not sufficient to disclose that the injuries above described were incurred in the collision, nor to show that such injuries were mortal in nature, or that they caused Miller's death. He argues that in the absence of the physician who saw Miller at the hospital, it could be that his death resulted from some other pre-existing or intervening cause.

From the facts we have recited, which are undisputed, we think the jury could logically infer that the unlawful conduct of the appellant was the proximate cause of Miller's death. Indeed, it would seem difficult, if not impossible, to reach any other conclusion. An instruction tendered by the appellant and given by the court adequately covered the situation presented by the absence of the physician. We find no error in the regard just discussed.

Appellant's assertion that his constitutional rights were violated by the taking of a drunkometer test are conclusively refuted by the evidence which discloses that he freely and voluntarily consented thereto, under conditions where he was mentally and physically able and free to make a choice, and with full knowledge that the results of the test might later be used for or against him.

The appellant seeks to predicate error upon the testimony of a police officer concerning the results of a

drunkometer test, and the procedures adopted by the officer which led up to and produced such results. However, although the questions put to the witness and the objections thereto are shown in the motion for new trial, none of the answers of the witness made in response to such questions are therein set forth in substance or otherwise. Thus, no question is presented for review. *Brown* v. *State* (1939), 216 Ind. 106, 23 N. E. 2d 267; *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, 37 N. E. 2d 537; *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439; Flanagan, Wiltrout & Hamilton, §1812, p. 388.

Dr. R. N. Harger, a chemist and toxicologist whose extensive learning and vast experience as such was not questioned, and who himself developed the device or scientific instrument known as the drunkometer, was asked the following question: "If the drunkometer test was given to a male and he exhaled into a balloon, the balloon was sealed and the initial weight of the tube was 23.1388 and the test revealed the percentage of alcohol was .139 percent or the equivalent of 2.78 ounces of alcohol or 5.56 ounces of whiskey, can you tell what the percentage of alcohol would have been in the blood approximately one hour and forty-five minutes prior thereto?" The substance of appellant's objection was that the answer would call for nothing more than a guess or broad conjecture on the part of the witness. The witness answered as follows: "The minimum figure an hour and forty-five minutes earlier would have been .165. May I explain to the jury. That's percent of alcohol by weight in his blood, as determined from his breath analysis. It could have been even higher than that. Some people who are fast burners might have been a little higher."

In support of his position the appellant argues the

validity of objections which were in fact not made to the question in the trial court. We do not find any authority or persuasive argument in appellant's brief in support of the objection actually made. It was permissible for the state to put a hypothetical question to an expert, which question conformed to the state's theory and which it contended was supported by the evidence and the inferences reasonably deducible therefrom. *Sharp* v. *State* (1939), 215 Ind. 505, 19 N. E. 2d 942. The question as framed called for the opinion of the witness on a scientific subject with which he had demonstrated himself to be expertly familiar. The value to be given the doctor's testimony was for the jury to determine on the basis of his knowledge of the subject concerning which he testified, as developed on direct examination and tested by the appellant on cross-examination. We find no error in this regard.

It is asserted that the court erred in deciding that the facts stated in count one of the indictment constitute a public offense under the laws of the state of Indiana. This brings into question the correctness of the overruling of appellant's motion to quash count one of the indictment. An examination of the motion to quash discloses that it was not therein asserted that the facts stated in count one fail to consitute a public offense. It avers only (1) that the grand jury which found the indictment had no legal authority to inquire into the offense charged, and (2) that count one of the indictment does not state the offense charged with sufficient certainty.

The appellant makes no attempt to cite authority or reason in support of the grounds of the motion to quash actually specified therein. He does undertake to urge and support by authority and reason the statutory

ground first above mentioned which he wholly failed to allege in his motion to quash. In this situation there is, of course, nothing presented for our consideration.

We have considered each substantial question raised by the appellant. The record discloses that the case was fairly tried and submitted on instructions concerning which no complaint is made, and a just result was reached. The judgment should be affirmed.

So ordered.

Flanagan, C. J., Bobbitt, Emmert and Gilkison, JJ., concur.

### ON PETITION FOR REHEARING.

DRAPER, J.—In his petition for rehearing the appellant calls our attention to the fact that he properly challenged the sufficiency of the facts stated in count one of the indictment to constitute a public offense under the laws of the State of Indiana, by addressing a motion in arrest of judgment thereto. The motion was overruled.

The appellant contends that the reckless homicide statute upon which count two of the indictment is based is specific, includes all the elements necessary to prove the more general offense of involuntary manslaughter, and so only the reckless homicide statute is presently in effect. Since count one of the indictment (involuntary manslaughter) was based upon driving an automobile while under the influence of intoxicating liquor as the proximate cause of death, and wholly fails to charge facts constituting the offense of reckless homicide, the appellant insists count one of the indictment was insufficient.

We think all of appellant's arguments in support of his position are fully answered by Burns' 1952 Repl., §47-2002, which reads as follows:

"All proceedings under section 52 (§47-2001)

of this act shall be subject to the following provisions:

"(1) Each of the three (3) offenses defined in this section is a distinct offense. No one of them includes another, or is included in another one of them. Section 52, subsection (a) (§47-2001(a)), in creating the offense of reckless homicide, does not modify, amend or repeal any existing law, but is supplementary thereto and to the other sections of this act. All three (3) of the offenses, or any two (2) of them, may be joined in separate counts in the same indictment or affidavit. One (1) or more of them may be joined in separate counts with other counts alleging offenses not defined in this section, such as involuntary manslaughter, if the same act, transaction or occurrence was the basis for each of the offenses alleged. With respect to the offenses of reckless homicide and involuntary manslaughter, a final judgment of conviction of one (1) of them shall be a bar to a prosecution for the other; or if they are joined in separate counts of the same indictment or affidavit, and if there is a conviction for both offenses, a penalty shall be imposed for one (1) offense only."

The appellant does not attempt to point out that the quoted section is in any way ambiguous, ineffective, inapplicable or invalid. In fact he does not even mention this section. In this situation we take the statute at face value.

Rehearing denied.

Flanagan, C. J., Bobbitt, Emmert, Gilkison, JJ., concur.

NOTE.—Reported in 120 N. E. 2d 176.

Rehearing denied 121 N. E. 2d 732.