**STATE of Indiana, Appellant (Plaintiff Below),**

v.

**John M. KEEL, Appellee (Defendant Below).**

**No. 02A03-8701-CR-1.**

Court of Appeals of Indiana, Fourth District.

Aug. 31, 1987.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant.

MILLER, Presiding Judge.

On July 14, 1985, a car driven by John M. Keel collided with a tree on West Washington street in Fort Wayne. Sherry Duff, a passenger in his automobile, was found to be dead. In connection with this collision, Keel was charged with reckless driving and driving while intoxicated resulting in the death of another. After the State rested, Keel declined to offer any evidence and moved for a directed verdict on the charge of driving while intoxicated resulting in the death of another. The trial court found the State had failed to present sufficient expert medical testimony establishing that the accident caused Duff's death, and directed a verdict in Keel's favor on this count. The jury ultimately found Keel guilty of reckless driving, and he was sentenced to one year in jail. The State now seeks a retrial, claiming the trial court erred in requiring the introduction of expert medical testimony to show cause of death. We find the trial court did err, however, we also find the Fifth Amendment (double jeopardy) prohibits the State from retrying Keel on this count.

### FACTS

The testimony adduced at trial relevant to the issues on appeal show that at approximately 2:50 A.M. on July 14, 1985, witness Kelly Williams, an employee of the *Fort Wayne Journal Gazette*, was returning to Fort Wayne after delivering papers to several towns in Indiana and Ohio. As she approached the city of Fort Wayne in the center lane of West Washington Street, she looked in her rearview mirror and saw Keel's car approaching very rapidly. She pulled into the left lane to prepare to make a left turn, and the car passed her at such a high rate of speed that she was

unable to tell who was driving. Keel's car, which had partially crossed the dividing line between two lanes and was travelling in both lanes, went into a curve and out of Williams's view. When entering the curve, she saw that the car had jumped the curb and slid sideways into three trees. The car was wrapped around the trees. Williams stopped her truck, and she and her sister, who had accompanied her on the delivery run, approached the car. She saw Keel behind the steering wheel. She then called for police and medical help.

Elizabeth Wolf, a paramedic, testified she was one of the paramedics summoned to the accident. She stated there were two people in the car—John Keel, who was sitting in the driver's seat, and a female, later identified as Sherry Duff. The lower half of Duff's body was pinned in the remains of the passenger side of the automobile, and the upper half had fallen across Keel's lap. Wolf observed that Duff had extensive injuries. When Wolf attempted to take vital signs, she discovered Duff had no pulse, circulation, or respiration. Based on this information, Wolf pronounced Duff dead at the accident scene. At trial, Wolf, over Keel's objection, opined that Duff died of "extensive multiple trauma and probable fractured cervical spine."

Finally, Walter Stout, an accident reconstruction expert with the Fort Wayne Police Department, testified as to his personal observation of the accident scene as it appeared that night. The pavement was damp, but not wet. The passenger side of the car had made contact with the tree, and the car had bent around the tree. The car normally was 6½ feet wide, but there was approximately only two feet of space between the farthest intrusion of the tree into the passenger side and the door of the driver's side. Stout also observed skid marks and marks on the curb which indicated where the car had gone out of control. Based on these marks and certain calculations, Stout gave his expert opinion that the car was travelling in excess of 90 miles per hour when it went out of control.

Stout also testified that he interviewed Keel several weeks after the accident. Keel told Stout that he had been drinking with Duff at a bar called Magilla's in New Haven that night. The two left the bar and were returning to Fort Wayne when the accident occurred; Keel admitted he was driving.

## DECISION

The State brings two issues for our review. It first argues the trial court erred in requiring medical testimony to establish the cause of Sherry Duff's death.[1] We find the trial court did err. The State also argues the Federal Constitution double jeopardy provisions do not prohibit retrial on the count of driving while intoxicated resulting in death. We do not agree.

### I. *Was Medical Testimony Required to Prove Cause of Death?*

■ A review of the cases cited by the State in its brief leads us to the conclusion that the State, under the facts of this case, was not required to introduce expert medical testimony to establish cause of death. *Wilson v. State* (1982), Ind., 432 N.E.2d 30; *Hicks v. State* (1981), Ind., 426 N.E.2d 411. The jury may infer cause of death from the facts introduced at trial. *Ray v. State* (1954), 233 Ind. 495, 120 N.E.2d 176. Of course, in order for the jury to be allowed to infer cause of death the State must introduce into evidence facts sufficient to support such an inference. *Reed v. State* (1979), 180 Ind.App. 5, 387 N.E.2d 82. (Buchanan, C.J., dissenting).

In *Ray*, the defendant had been drinking at his girlfriend's house. As he drove from her house at 12:30 A.M. he struck the curb and a parked car. Shortly thereafter, between 12:30 and 12:45, Ray was driving north in the southbound lane of Madison Avenue in Indianapolis at approximately seventy miles per hour in a thirty mile zone when he ran head on into the victim's car. Witnesses testified the victim "was

---

1. It appears the trial court considered paramedic Wolf's training was sufficient to permit her to testify that Duff was dead. However, the court also apparently determined Wolf's training was not sufficient to permit her to determine the cause of death.

slumped over the seat and the whole side of his head was bashed in ... blood was squirting all over." *Ray, supra* at 497, 120 N.E.2d at 177. "[The victim] was lying in the seat with his head back over to the right side of the car, to the back, in a kind of a twisted position." *Id.* at 497, 120 N.E.2d at 177. "He had blood coming from his head and also from his right shoulder, bleeding badly, severe hemorrhages. I believe the blood was coming from his ears. He was so bloody I could not tell." *Id.* at 497, 120 N.E.2d at 177. "His head was on the back part of the car in a pool of blood." *Id.* at 497, 120 N.E.2d at 177. The victim died in the hospital, but the State was unable to produce the attending physician at trial. The supreme court rejected Ray's contention that an intervening or pre-existing cause could have caused the victim's death. Justice Draper, writing for the court, stated:

> "From the facts we have recited, which are undisputed, we think the jury could logically infer that the unlawful conduct of the appellant was the proximate cause of [the victim's] death. Indeed it would seem difficult, if not impossible, to reach any other conclusion." *Id.*, 233 Ind. at 498, 120 N.E.2d at 178.

Our Third District addressed this issue in *Fought v. State* (1984), Ind.App., 468 N.E.2d 247. In *Fought,* the evidence established the defendant consumed between eight and twelve cans of beer between four P.M. and midnight. He then drove his truck along State Road 5. The victim was driving a well lit bicycle approximately one foot from the berm of the road when Fought's truck, which was travelling at approximately fifty-five miles per hour, struck his bicycle, and threw him 170 feet into a bank of snow. There were no indications that Fought had attempted to avoid the victim. The witness who found the body testified that there were no signs that it had moved after landing in the snow bank. The coroner fixed the time of death at 12:15, but no medical expert testified as to cause of death. Judge Hoffman wrote:

> "In *Ray v. State,* (1954) 233 Ind. 495, 120 N.E.2d 176, defendant argued that the absence of testimony from the attending physician left the jury to speculate as to the direct and proximate cause of death. The Supreme Court of Indiana held that the jury could have logically inferred from circumstantial evidence similar to that now before this Court that defendant's conduct proximately caused the victim's death. The evidence presented in this case was likewise sufficient to prove that Fought's conduct directly caused [the victim's] death." *Id.* at 249.

However, in *Reed, supra,* we found the evidence insufficient to support the defendant's conviction because there were essentially no facts from which the jury could reasonably infer that injuries from the accident caused the death of the victim. The testimony showed that Reed, while intoxicated, drove his car into two other parked cars and finally ran into a brick wall at a speed of approximately 40 miles per hour. Both he and his passenger, Edna Finkbaum, were examined by medical technicians at the scene. The technicians informed the police that Edna had sustained only a knee injury but was not seriously injured. There was no evidence that she sustained head injuries in the crash or that she was taken to a hospital.

However, Edna did die in a hospital, approximately twenty-eight hours later as a result of a closed head injury, that is, a blow to the head which resulted in injuries to the brain and the formation of a blood clot which had been surgically removed before she died. This information was revealed by a pathologist who performed an autopsy on Edna two days after the accident. He testified from hospital records which established the time of death. The surgeon who removed the blood clot did not testify. Further, it was the pathologist's opinion that the blow occurred a day or two before death although it was possible that it had occurred as much as two days before the automobile accident. Defense witnesses attested to the fact that Edna was an alcoholic and had been observed falling down, due to her intoxication, on numerous occasions including an incident fifteen minutes before the accident when she fell and hit the porch steps.

In reaching our conclusion that cause of death was not established, we observed that there was no evidence that Edna sustained a head injury—or any serious injury, for that matter—in the accident. There was no evidence she was taken to the hospital after the accident. Hospital records were not produced indicating when she was in fact admitted to the hospital and her condition at the time. The attending physician did not testify. From the foregoing, we found that the evidence presented a mere suspicion or possibility of guilt and was not sufficient to support the conviction.

Here, we find the evidence sufficient to support the inference that the accident caused Sherry's death. An eyewitness saw Keel's car speeding and saw that it was not in its own lane. She also saw the car literally wrapped around a tree moments after it passed her. Several witnesses testified to the extensive damage to the car caused by the tree. The witnesses also testified they saw Sherry's body pinned in the car. Elizabeth Wolf testified that Sherry was dead at the scene and, unlike the medical technicians in *Reed*, she also testified that Sherry had suffered extensive injuries. Walter Stout testified that Keel's car was travelling in excess of 90 miles per hour when it went out of control; thus, a jury could reasonably have inferred, from this evidence, that Sherry died of injuries sustained in the accident. The trial court erred in taking this issue from the jury by directing a verdict.

## II. *Would Retrial Constitute Double Jeopardy?*

The State asserts that Keel should be retried on Count I. In support of this assertion, the State cites *Webster v. State* (1980), 274 Ind. 668, 413 N.E.2d 898, for the proposition that retrial is not barred by the Fifth Amendment[2] where the State's evidence is not legally insufficient and where the State has not had a fair opportunity to present its evidence to the trier of fact.

2. The Fifth Amendment to the Constitution of the United States of America reads in part, "... nor shall any person be subject for the same

■ The State attempts to extract from *Webster* a rule of general application when, in fact, *Webster* merely announced a limited exception to a rule which is itself an exception to a general appellate rule. Generally, the Fifth Amendment does not bar retrial of a defendant who has had a judgment of conviction reversed on appeal. *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; *United States v. Ball* (1896), 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300. However, where an appellate court reverses a conviction because of insufficient evidence, double jeopardy attaches and retrial is barred by the Fifth Amendment. *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1; *Greene v. Massey* (1978), 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15. Retrial is barred in these cases because "the government's case [is] so lacking that it should not have even been *submitted* to the jury." *Burks, supra* 437 U.S. at 16, 98 S.Ct. at 2150 (emphasis in original). Chief Justice Burger, writing for the Court in *Burks*, explained the rationale for this rule:

> "In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to guilt or innocence.
>
> \*    \*    \*    \*    \*    \*
>
> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." *Id.* at 16, 98 S.Ct. at 2150.

The *Webster* opinion merely recognizes that there are instances in which an erroneous ruling by the trial court can deprive the State of its "one fair opportunity to offer whatever proof it could assemble." Our supreme court has found retrial appropriate in these instances.

offense to be twice put in jeopardy of life or limb...."

The State is not afforded the same opportunity to retry when the trial court orders an acquittal and withdraws the charge from the jury, that is, where the court directs a verdict. The United States Supreme Court and our own supreme court have held that an acquittal based on insufficiency of the evidence is an absolute bar to retrial. *Smalis v. Pennsylvania* (1986), 476 U.S. 140, 106 S.Ct. 1745; *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *Fong Foo v. United States* (1962), 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629; *Kepner v. United States* (1904), 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114; *State v. Goodrich* (1987), Ind., 504 N.E.2d 1023. Retrial is barred even if the acquittal is based on egregiously erroneous grounds. *Sanabria v. United States* (1978), 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43.

The Supreme Court has explained the differing results in these cases by expounding the doctrine of continuing jeopardy. This doctrine holds that, where a jury has been unable to reach a verdict or has reached a verdict of guilty which is later set aside by the trial court or reversed on appeal, the defendant is not subject to double jeopardy since the criminal proceedings against the defendant have not run their full course. *See Price v. Georgia* (1970), 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300. The doctrine is grounded in "principles of fairness to society, lack of finality, and limited waiver." *Justices of Boston Municipal Court v. Lydon* (1983), 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311.

Where the first criminal proceeding has terminated favorably to the defendant, jeopardy is not continuing. The jeopardy of life or limb engendered by the first proceedings terminates with the termination of those proceedings. *Smalis, supra; Lydon, supra; Goodrich, supra.* Because the trial court directed verdict on the count of driving while intoxicated resulting in death terminated the proceedings against Keel favorably to him, jeopardy also terminated. To allow the State to retry would be to subject him to jeopardy a second time. The Fifth Amendment, the rulings of the United States Supreme Court, and the rulings of our own supreme court will not tolerate such a result.

We therefore hold the trial court erred in requiring the State to introduce medical testimony to prove the cause of Sherry Duff's death. However, we also hold the double jeopardy provisions of the Fifth Amendment prohibit the State from retrying Keel. We must then affirm the judgment of the Allen Circuit Court.

CONOVER and YOUNG, JJ., concur.